In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3687

United States of America,

Plaintiff-Appellant,

v.

Cordell G. Sawyer,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 99-CR-30091-PER--Paul E. Riley, Judge.

Argued March 30, 2000--Decided August 18, 2000

Before Bauer, Diane P. Wood, and Williams, Circuit Judges.

Williams, Circuit Judge. Cordell G. Sawyer, who stands charged with being a felon in possession of a firearm, successfully argued to the district court that bullets found on his person when he was arrested (which match the bullets in the gun he is alleged to have possessed) should be suppressed as the product of an illegal search. The government takes the opposite view and has filed this interlocutory appeal challenging the district court's ruling. Because we conclude that the bullets found on Sawyer were not the product of an illegal search, we reverse.

I

The only account of the events leading up to the search that produced the bullets the district court suppressed comes from Deputy United States Marshal Thomas Woods, who was the only witness to testify at Sawyer's suppression hearing. From Woods's testimony the following facts emerge.

On the night of Sawyer's arrest, Woods was assigned to a joint federal-state fugitive task force operating in East St. Louis, Illinois. At approximately 10:30 p.m., Woods and the other deputy marshals and local police officers with whom he was working were patrolling the 1400

block of North 55th Street, a high crime area where Woods and other officers had made prior arrests for drug and weapons offenses. While traveling north on 55th Street, Woods and the other task force officers observed Sawyer standing alone in front of a vacant building dressed in all black clothing. Suspicious, the officers stopped their vehicle. Woods, who was wearing a bullet proof vest with the words "Police, U.S. Marshal" on it, got out, identified himself as a law enforcement officer, and told Sawyer that he would like to speak with him. Sawyer immediately turned and ran toward the rear of the vacant building.

Woods gave chase, using his flashlight to keep Sawyer in view. During the chase, Sawyer stumbled and fell. As Sawyer was getting up, Woods saw Sawyer pull an object from his midsection, from underneath his clothing, and throw it to the ground. Woods, who was only ten feet away at the time, believed the object to be a gun, perhaps stainless steel and semiautomatic, but he was not absolutely sure. After dropping the object, Sawyer continued his flight from Woods. Shortly thereafter, Woods lost sight of Sawyer.

By this time, however, Woods was in verbal contact with the other task force officers and told them what had happened. About a minute later, Sawyer was found hiding under a bush about twenty yards from where Woods had lost sight of him. As Woods approached, one of the task force officers, Deputy United States Marshal Tony Nelson, was handcuffing Sawyer. Woods placed Sawyer under arrest for "unlawful use of a weapon, carrying a gun," a state crime. See 720 Ill. Comp. Stat. 5/24-1(a)(4). Meanwhile, Nelson frisked Sawyer and discovered a plastic bag containing a number of .45 caliber bullets in Sawyer's left front pants pocket.

Once Sawyer was in custody, Woods returned to the area where he had seen Sawyer toss the object he believed to be a gun. After some searching, he found a Colt semiautomatic handgun, light in color, possibly stainless steel. The gun was loaded with .45 caliber bullets, which were subsequently determined to be identical to the bullets found on Sawyer.

Later, it was discovered that Sawyer had previous felony convictions. Based on this information, the U.S. Attorney for the Southern District of Illinois charged Sawyer with being a felon in possession of a firearm, in violation of 18 U.S.C. sec. 922(g)(1). In pretrial proceedings, Sawyer filed a motion to suppress the bullets found on him when he was arrested on the ground that the bullets were obtained

pursuant to an illegal search. The government responded that the search that uncovered the bullets was justified both as a search incident to arrest and as a protective pat-down search authorized by Terry v. Ohio, 392 U.S. 1 (1968).

The district court rejected both of the justifications offered by the government. With respect to the first, the court concluded that the search was not a proper search incident to arrest because Sawyer's warrantless arrest was not supported by probable cause. As for the second, the court ruled that the search could not be justified as a Terry pat-down search because there was insufficient evidence regarding the knowledge of the officer who conducted the search. Accordingly, the district court ordered the bullets suppressed.

Exercising its right to pursue an interlocutory appeal of the suppression order, see 18 U.S.C. sec. 3731, the government now appeals. It raises three arguments: (1) that the suppressed bullets were recovered pursuant to a search incident to a lawful arrest; (2) that the suppressed bullets were recovered pursuant to a lawful Terry pat-down search; and (3) that the suppressed bullets would have inevitably been discovered by lawful means and therefore should not have been suppressed. Because the first of these arguments is adequate to resolve this appeal, however, our analysis will be restricted to the issues raised by that argument.

II

It has long been the rule that law enforcement officers may conduct a full search of an arrestee in order to discover weapons the arrestee might be carrying and to preserve evidence that might be destroyed. United States v. Robinson, 414 U.S. 218, 235 (1973); United States v. Rodriguez, 995 F.2d 776, 778 (7th Cir. 1993). Such a search is permissible, however, only if the arrest was legal. United States v. Kincaid, 212 F.3d 1025, 1028 (7th Cir. 2000); United States v. Levy, 990 F.2d 971, 974 (7th Cir. 1993). An officer may legally arrest a suspect without obtaining an arrest warrant beforehand only if the officer has probable cause to believe the suspect has committed a crime and the suspect is not inside his or her home. Payton v. New York, 445 U.S. 573, 576 (1980); United States v. Watson, 423 U.S. 411, 423-24 (1976); United States v. Gilbert, 45 F.3d 1163, 1166 (7th Cir. 1995). The government claims that Sawyer's arrest satisfies the requirements for a warrantless arrest, but Sawyer maintains that neither Deputy Marshal Woods, nor any of the other task force officers, had probable cause to believe he had committed a crime.

A law enforcement officer has probable cause to make an arrest when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a prudent person in believing the suspect has committed or is committing an offense. Gilbert, 45 F.3d at 1166; United States v. Levy, 990 F.2d 971, 973 (7th Cir. 1993) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). Probable cause, however, does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime. United States v. Burrell, 963 F.2d 976, 986 (7th Cir. 1992). So long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists. Levy, 990 F.2d at 973 (citing Illinois v. Gates, 462 U.S. 213, 244 (1983)).

As noted above, the district court agreed with Sawyer that the task force officers lacked probable cause to arrest Sawyer at the time he was arrested. The district court appears to have rested its ruling on three alternative grounds: (1) that probable cause did not exist until the task force officers later determined that Sawyer had prior felony convictions; (2) that Deputy Marshal Woods's belief that Sawyer dropped a gun was insufficient to create probable cause; and (3) that without knowing what Deputy Marshal Nelson knew when he initiated Sawyer's arrest, there was insufficient evidence to find that probable cause existed. The government contends that each of these determinations is flawed.

In considering a challenge to a suppression order, we review de novo the ultimate conclusion regarding whether the law enforcement officers had probable cause. Ornelas v. United States, 517 U.S. 690, 699 (1996). At the same time, however, we review all findings of historical fact and credibility determinations deferentially, for clear error. Id. Under these standards, we are persuaded that none of the grounds the district court offered for its suppression ruling supports the conclusion that the task force officers lacked probable cause to arrest Sawyer.

The first ground on which the district court relied--that probable cause did not exist until the task force officers later determined that Sawyer had prior felony convictions--rests on the mistaken assumption that Sawyer was initially arrested for being a felon in possession of a firearm (the federal crime with which he was ultimately charged). However, as is clear from

the testimony of Deputy Marshal Woods at the suppression hearing, Sawyer was arrested for "unlawful use of a weapon, carrying a gun," a violation of Illinois's general prohibition on carrying a concealed firearm, 720 Ill. Comp. Stat. 5/24-1(a)(4)./1 Thus, the fact that the task force officers had not yet identified Sawyer as a convicted felon is irrelevant to whether they had probable cause to arrest Sawyer for this state law violation. The district court's conclusion to the contrary is erroneous.

The second ground the district court articulated for its suppression ruling--that Deputy Marshal Woods's belief that Sawyer dropped a gun was insufficient to create probable cause--suffers from a similar problem. The district court attributed a greater than warranted level of uncertainty to Woods's belief that Sawyer dropped a gun based on what appears to be a misunderstanding of Deputy Marshal Woods's testimony regarding what he saw Sawyer toss to the ground while he pursued him. The district court's order suggests that Woods was certain only that he saw Sawyer toss a stainless steel object to the ground, but Woods actually testified that he was "very certain" that Sawyer dropped a firearm. There is nothing in the district court's suppression order to suggest, as Sawyer argues on appeal, that the court's characterization of Woods's testimony rests on a credibility determination rather than a simple misunderstanding of that testimony. As such, the district court committed clear error in attributing unwarranted uncertainty to Woods's belief that Sawyer dropped a gun.

In any event, and more importantly, probable cause does not require certainties. Given the surrounding circumstances, as long as Woods reasonably believed there was a substantial chance that the object Sawyer dropped was a firearm, he had probable cause to arrest Sawyer. See Kincaid, 212 F.3d at 1029 (probable cause inquiry depends on officer's reasonable beliefs). In concluding that Woods's belief that Sawyer dropped a gun would not support a finding of probable cause, the district court simply imposed too technical and too stringent a probable cause standard.

The third ground the district court gave for its suppression ruling--that without knowing what Deputy Marshal Nelson knew when he initiated Sawyer's arrest, there was insufficient evidence to find that probable cause existed--also relies on a too stringent probable cause standard. When law enforcement officers are in communication regarding a suspect, the knowledge of one officer can be imputed to the other officers under the

collective knowledge doctrine. United States v. Hensley, 469 U.S. 221, 232-33 (1985); Tangwall v. Stuckey, 135 F.3d 510, 517 (7th Cir. 1998); United States v. Nafzger, 974 F.2d 906, 910-11 (7th Cir. 1992). For instance, if officers from an Illinois police department have probable cause to arrest a suspect and they send a bulletin regarding the suspect to police departments in Wisconsin, a Wisconsin police officer may arrest the suspect without personal knowledge of the facts and circumstances supporting the probable cause possessed by the Illinois officers who sent the bulletin. See Hensley, 469 U.S. at 232-33. The same is true when the officers are all at the scene of an arrest. United States v. Edwards, 885 F.2d 377, 382-83 (7th Cir. 1989). Therefore, because Woods was in communication with the other task force officers at the scene, including Nelson, Woods's knowledge can be imputed to Nelson. It does not matter that we do not know what Nelson knew when he initiated Sawyer's arrest, because we do know what Woods knew.

This entire analysis, however, proceeds on the assumption that it was necessary for Deputy Marshal Nelson to have probable cause to arrest Sawyer, but the correctness of that assumption is far from clear. Although Nelson cuffed Sawyer, it was Woods who placed Sawyer under arrest. Given Woods's participation in the arrest, there is no basis for thinking it necessary that Nelson have probable cause. For this reason too, the district court erred in basing its suppression ruling on the lack of evidence concerning Deputy Marshal Nelson's knowledge.

Once the district court's legal and factual errors are put to one side, it is plain that Woods (and, to the extent relevant, the other task force officers) had probable cause to arrest Sawyer. To begin with, Sawyer was standing alone in front of a vacant house in a high crime area. In addition, when Deputy Marshal Woods approached, Sawyer fled and continued to flee after Woods gave chase. Finally, Woods observed Sawyer toss what looked to be a firearm to the ground during his flight./2 Viewed together and from a common sense perspective, these facts would allow a prudent person to believe that Sawyer had committed the crime, under Illinois law, of unlawful possession of a weapon. Compare Tom v. Voida, 963 F.2d 952, 959-60 (7th Cir. 1992) (flight in a high crime area, coupled with abandonment of what the officer believed to be a stolen bicycle, provided probable cause for arrest). Therefore, we conclude that probable cause supported Sawyer's arrest. Accordingly, the search that uncovered the bullets found on Sawyer was a lawful search incident to arrest and the bullets recovered should not have been

suppressed.

III

Because Cordell Sawyer's arrest was lawful and the arresting officers therefore could lawfully search Sawyer, we conclude that the district court erred in suppressing the bullets the officers found. Accordingly, we Reverse the district court's suppression ruling.

/1 At the time of Sawyer's arrest, and before its recent amendment, see 2000 Ill. Laws 91-690, 720 Ill. Comp. Stat. 5/24-1(a) read, in relevant part,

A person commits the offense of unlawful use of weapons when he knowingly:
* * *

(4) Carries or possesses in any vehicle or concealed on or about his person except when on his land or in his own abode or fixed place of business any pistol, revolver, stun gun or taser or other firearm.

/2 In passing, Sawyer suggests that Woods could not have possibly seen what Sawyer tossed to the ground since it was dark out and the only light in the area came from Woods's flashlight, but there is no basis in the record to think that Woods's flashlight would not have allowed him to form a reasonable belief about what Sawyer dropped. Accordingly, this argument does not provide a ground for doubting that Woods saw what he says he saw.