James P. HILL, Plaintiff–Appellant,

v.

Arthur L. JONES, et al., Defendants–Appellees.

No. 00–3260.

United States Court of Appeals,
Seventh Circuit.

Submitted Oct. 16, 2001.*

Decided Nov. 1, 2001.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f).

Before BAUER, EASTERBROOK, and EVANS, Circuit Judges.

### Order

James Hill, who is serving a term of 110 years' imprisonment in Wisconsin following his guilty pleas to sex offenses and firearms crimes, seeks damages under 42 U.S.C. § 1983 from the officers who searched his apartment and arrested him, beginning the process that led to his conviction.

On February 27, 1996, Dana Neal told the Milwaukee police that his juvenile sister Larkin had called her from Hill's home and was working for Neal under the name "Deja" as an exotic dancer, a cover for a life of prostitution. Three officers set out to investigate and knocked on Hill's door. They were admitted by Michelle Fields, Hill's girlfriend. When Hill appeared, he denied knowing Larkin Neal or "Deja" and denied further that anyone else was in his apartment. Noises from upstairs led the officers to question that assertion. Hill told the officers that the sounds came from Quinnsanna Dawson, the upstairs tenant. The officers asked Dawson for permission to look around upstairs; permission was granted, and they found Larkin Neal hidden in a crawl space. That discovery led to Hill's arrest for obstructing a police officer and eventually his conviction for first degree sexual assault of a child plus the sexual exploitation of a minor. Later the officers returned with a warrant to search Hill's apartment, and they found evidence of additional offenses.

Hill contends that the arrest violated the fourth amendment because he did not obstruct the investigation; according to Hill, he knew Larkin Neal as "Felicia R. Martin" or "Dasha" and thus did not answer the officers' questions falsely. Moreover, Hill contends, the officers saw incriminating material while walking through the halls (and, Hill insists, opening drawers) before the arrest, and they wrongly used this information to obtain the warrant. None of these claims is foreclosed by Hill's conviction, or by the issue-preclusive effect of the denial of his motion to suppress evidence, because the state courts did not find that the search and arrest was proper; instead they concluded that any improper conduct did not justify the exclusion of evidence because its lawful discovery was inevitable. See *State v. Hill,* 2000 Wisc.App. LEXIS 128 (Feb. 15, 2000). It is precisely because of this disjunction between violations of the fourth amendment and the scope of the exclusionary rule that we have held search-and-seizure claims to be outside the scope of *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). See, e.g.,

*Gonzalez v. Entress*, 133 F.3d 551 (7th Cir.1998).

We may assume that Hill did not know Larkin Neal's real name; she was carrying bogus identification (though its provenance is unclear, and Hill may have had a role in its procurement). Still, probable cause depends on what the officers reasonably believe at the time, not what later turns up. *United States v. Sawyer*, 224 F.3d 675, 678–79 (7th Cir.2000). The officers strongly suspected that Larkin was in Hill's apartment (having called her brother from there), yet Hill not only denied knowing Larkin but also denied that anyone was secreted in his apartment–a statement that the officers verified was false. That alone gave the officers probable cause to believe that Hill had obstructed the investigation.

As for the items that the officers saw when inside the apartment: They were in the apartment with Fields's permission, and Hill never attempted to revoke or limit the consent Fields had given. See *United States v. Wesela*, 223 F.3d 656, 661 (7th Cir.2000). Whatever was in plain view–a good deal of it incriminating–was properly seen and could have been seized. Yet the officers were careful and left the items in the apartment until they returned with the warrant. That procedure respected Hill's rights. If as Hill contends (and we must assume, given the posture of the case) the officers *also* opened drawers or cabinets before obtaining the warrant, something they should not have done, this still would not lead to damages unless Hill could establish any increment of harm from these acts compared with what the officers had properly seen. He does not make any effort to do this. The real injury came not from peering into closed spaces but from the subsequent search and conviction; what the officers saw in plain view would have led to that search, on the authority of the warrant, to the seizure of everything that the officers eventually took away, and to Hill's long-term custody. Any premature prying therefore cannot support an award of damages.

Remaining contentions, such as Hill's effort to proceed under RICO and to hold the City of Milwaukee responsible for the officers' errors, do not require discussion in light of the fact that the officers themselves are not liable.

AFFIRMED