UNITED STATES of America,
Plaintiff–Appellee,

v.

Wendell COPELAND, Jr.,
Defendant–Appellant.

No. 01–4145.

United States Court of Appeals,
Seventh Circuit.

Argued June 12, 2002.

Decided Aug. 13, 2002.

Before MANION, ROVNER, and WILLIAMS, Circuit Judges.

### ORDER

Wendell Copeland, Jr., appeals from the denial of his motion to suppress evidence—a gun and a bag of crack—found in the car in which he was riding when he was arrested on a warrant. Because Copeland's suppression argument fails for a number of reasons, we affirm.

### BACKGROUND

At the hearing on Copeland's motion to suppress, the government introduced an arrest warrant and a "wanted flyer" featuring Copeland. The warrant, issued by the Floyd County, Indiana, circuit court on December 5, 2000, commanded Copeland's arrest for three Indiana felonies (battery resulting in serious bodily injury, carrying a handgun without a license, and criminal recklessness) and identified Copeland by name, race, gender, date of birth, and last known address. The flyer, issued the same day by the New Albany, Indiana, police department, described Copeland as "wanted" for the three felonies and as "armed and dangerous." The flyer included a color photo of Copeland and identifying details.

Detective Leslie K. Kavanaugh, who served on the police force of neighboring Jeffersonville, Indiana, and worked with New Albany police officers on the Southern Indiana Drug Task Force, testified that New Albany detectives told him about the warrant for Copeland's arrest and that he saw the wanted flyer—which indicated to him that Copeland was "wanted on active warrants"—sometime in late 2000 or early 2001.

Kavanaugh further testified that while he was on duty on January 21, 2001, he received a telephoned tip from a "documented" source alerting him that Copeland soon would be traveling through the "Allison Lane" area of Jeffersonville in a white, four-door car with tinted windows driven by a man named David Valentine. Five minutes later, Kavanaugh spotted a car matching the tipster's description in the Allison Lane neighborhood and recognized the driver as Valentine. Kavanaugh then confirmed via radio that Copeland was "wanted on active warrants" and called for backup. Two Jeffersonville officers driving marked cars arrived to assist and, with their red and blue lights flashing, stopped the white car by blocking its path. Kavanaugh and the other officers approached the car with their weapons drawn, ordering Copeland, who was in the front passenger seat, to place his hands on the dashboard. Copeland disobeyed this instruction and moved his right hand to his lap. A Lorcin handgun was visible on the

floor between the front passenger seat and the door when one of the officers opened it to remove Copeland; Kavanaugh testified that Copeland had been reaching toward the Lorcin when he removed his hand from the dashboard. A pat-down search revealed that Copeland was wearing a bulletproof vest, and a search of the car yielded a bag of crack packaged for distribution on the floor in front of Copeland's seat as well as another firearm. Copeland was then placed under arrest.

Copeland was charged with possessing a firearm in furtherance of a drug-trafficking crime, 18 U.S.C. § 924(c)(1), and possession with intent to distribute cocaine base, 21 U.S.C. § 841(a)(1), based on the crack and the Lorcin. He moved to suppress all evidence seized during the course of the stop, arguing that the police lacked "probable cause in the first instance to stop or detain th[e] vehicle."

The district court, in denying the motion, observed that investigatory stops require only reasonable suspicion—not probable cause as Copeland had argued. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The court went on to note that United States v. Hensley, 469 U.S. 221, 232, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), explicitly authorized investigatory stops based on flyers or bulletins issued "on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense," and that the case for reasonable suspicion was much stronger in Copeland's case because his flyer was based on the issuance of an arrest warrant and thus on the higher standard of probable cause. Finally, the court found that although Kavanaugh did not receive "confirmation" of the warrant until sometime after Copeland's arrest—a finding that, as explained below, is clearly erroneous—Kavanaugh's reasonable belief that Copeland was subject to an arrest warrant provided probable cause for Copeland's arrest, and the search of the car was permissible as a search incident to the arrest.

Copeland pleaded guilty to the charges based on the Lorcin and the crack, as well as four distribution counts based on earlier events, in a plea agreement in which he reserved his right to appeal the denial of his suppression motion.

## ANALYSIS

Copeland's argument on appeal is that his encounter with the police was an arrest from its inception—not merely a stop—and that the district court erred in applying the reasonable suspicion standard that governs investigatory stops. See Terry, 392 U.S. at 27. Instead, Copeland contends, the court should have determined whether his "arrest" was supported by probable cause.

■ The first problem with Copeland's argument is that he never presented it to the district court. He directed his challenge at "the stop itself" and never characterized his initial encounter with the police as an arrest. Accordingly, Copeland forfeited the argument that he was "arrested" at the moment the officers effected the traffic stop. See, e.g., United States v. Felix–Felix, 275 F.3d 627, 633–34 (7th Cir. 2001) (defendant's failure to specify why investigatory stop became an arrest amounts to forfeiture).

Even if treated as preserved, the argument is weak. Copeland offers only the bare assertion that a reasonable person in his situation would have felt his freedom was restrained, but he omits the crucial part of the standard: whether the restraint on freedom of movement is "of the degree which the law associates with formal arrest." See, e.g., United States v. Ienco, 182 F.3d 517, 523 (7th Cir.1999). In

fact, the law does not treat traffic stops as arrests merely because they involve drawn weapons, *see, e.g., United States v. Trueber,* 238 F.3d 79, 94 (1st Cir.2001); *United States v. Heath,* 259 F.3d 522, 530 (6th Cir.2001), vehicle blockades, *see, e.g., Heath,* 259 F.3d at 530; *United States v. Taylor,* 162 F.3d 12, 21 (1st Cir.1998), or orders that the suspect assume a particular position, *see, e.g., Taylor,* 162 F.3d at 21. Indeed, courts have held that seizures significantly more intrusive than Copeland's initial encounter with police constitute investigatory stops and *not* arrests. *See, e.g., Heath,* 259 F.3d at 525–26, 529 (officers blocked suspect's car, approached him with guns drawn, pulled him from vehicle, wedged him between car door and body of car and handcuffed him); *Taylor,* 162 F.3d at 21–22 (officers blocked suspect's car, at least 2 of the 10–12 officers had weapons drawn, suspects placed face-down on ground and frisked).

■ An immediate arrest would have been justified in any event, because Kavanaugh's awareness of the warrant for Copeland's arrest—whether from a flyer or a police dispatcher, *see, e.g., United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); *United States v. Mounts,* 248 F.3d 712 (7th Cir.2001)— and the informant's partially-corroborated tip that Copeland was riding in the white car, *see, e.g., United States v. Allen,* 235 F.3d 482 (10th Cir.2000), provided probable cause to believe that one of the car's occupants had committed a crime. Copeland offers no authority for his suggestion that officers must "double-check" a warrant before effecting an arrest, but even if such a procedure was required, Kavanaugh's uncontroverted testimony shows that he complied with it. We suspect, as the government suggests, that the district court's finding that Kavanaugh did not confirm the warrant until *after* Copeland's

arrest is an error due to the unavailability of the transcript at the time the court drafted its order. In any case the finding is clearly erroneous because no evidence supports it, and because the order contains no suggestion that the finding was based on a credibility determination. *See, e.g., United States v. Sawyer,* 224 F.3d 675, 680 (7th Cir.2000).

■ Finally, the point at which Copeland was arrested does not bear on the admissibility of the essential evidence because Copeland has not challenged the district court's conclusion that Kavanaugh had reasonable suspicion to effect an investigatory stop. Indeed, the wanted flyer alone provided reasonable suspicion, *see Hensley,* 469 U.S. at 232, and a stop based on the flyer would have yielded the same evidence Copeland seeks to exclude as the product of his unlawful "arrest." The stop would have led to the discovery of the gun in plain view on the floor of the car, which in turn would have given the officers reasonable suspicion (if they did not already have it based on the flyer's warning that Copeland was "armed and dangerous") that Copeland was dangerous and might be able to gain immediate control of a weapon inside the car, which in turn would have allowed them to search the passenger compartment for weapons, which would have revealed the crack found on the floor of the front seat. *See Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (permitting *Terry* "frisk" of car for weapons). It also would seem that as a mere passenger Copeland lacks standing to challenge the search of the car, but the government has not made that argument. *See, e.g., United States v. Price,* 54 F.3d 342, 345–46 (7th Cir.1995) (mere passengers lack Fourth Amendment "standing" to challenge car searches; objection can be waived by government).

For the foregoing reasons, Copeland's suppression motion was properly denied.

AFFIRMED.