**UNITED STATES of America,**

v.

**Reginal SCOTT, Defendant.**

**Criminal Action No. 02–106–2.**

United States District Court,
E.D. Pennsylvania.

Sept. 11, 2002.

Curtis R. Douglas, Philadelphia, PA, for plaintiff.

Robert E. Welsh, Welsh & Recker, Philadelphia, PA, for defendant.

*MEMORANDUM & ORDER*

Katz, Senior District Judge.

Reginal Scott, the defendant, is charged along with two other defendants in a sev-

en-count superseding indictment alleging possession with intent to distribute cocaine base or "crack" and carrying a firearm during and in relation to a drug trafficking offense. The defendant now moves to suppress the introduction into evidence of a Beretta .380 caliber semi-automatic firearm and 44 packets containing a detectable amount of cocaine base or "crack." These items were seized from the defendant who was searched on September 29, 2001.

Upon consideration of the submission of the parties, and after a hearing on September 10, 2002, the court ruled from the bench that the evidence would not be suppressed. The court now writes briefly to supplement that ruling.

*Findings of Fact*

1. On September 29, 2001, at approximately 11:07 p.m., Philadelphia Police Officers Cavalieri and Caprara turned southbound onto 17th Street from Ellsworth Street in Philadelphia, PA in an unmarked police vehicle. As the officers turned onto 17th Street, they saw a vehicle at 17th and Annin directly in front of them. Officer Caprara saw several shots fired from the passenger side of this vehicle.

2. Officer Caprara described the vehicle via police radio as a black Honda with Pennsylvania tag # BTY0761. The officers continued in pursuit while a marked police vehicle with two additional officers, Bucceroni and Brook, took over main pursuit of the Honda. Officers Bucceroni and Brook pursued the Honda at high speeds for approximately twenty blocks until the Honda stopped in the 2200 block of Moore Street.

3. At no time did Officer Caprara lose sight of the black Honda.

4. As the Honda came to a stop, the two passenger side doors opened. Officer Bucceroni exited the police car from the driver side and approached the rear passenger door of the Honda. Officer Bucceroni saw defendant Scott move away from the Honda.

5. As Defendant Scott exited from the rear passenger door, Officer Bucceroni noticed defendant Kevin Davis exit from the front passenger seat. Defendant Davis ran eastward in a crouched position on Moore Street, and Officer Brook pursued Davis.

6. As Defendant Scott moved away from the Honda, Officer Bucceroni saw defendant Kevin Minnis with a firearm in his hand. Officer Bucceroni then apprehended defendant Minnis and recovered a Heckler & Koch USP 9 mm semi-automatic pistol with laser sights and a magazine loaded with eleven rounds.

7. As Officers Brook and Bucceroni apprehended defendants Minnis and Davis, Officer Caprara arrived. A crowd of approximately fifty people had assembled near the Honda, and Officer Caprara noticed Defendant Scott moving away from the Honda. As Officer Caprara asked Defendant Scott to leave the area, a passerby informed the officer that defendant Scott was in the Honda. Officers Caprara, along with Officer Dawsonia, approached defendant Scott.

8. Officer Caprara grabbed defendant Scott by his shirt. Scott pushed Officer Caprara's hand away and attempted to run from the scene. Both Caprara and Dawsonia gave chase. Officer Caprara was near defendant Scott as she observed him discard from his waist a gun as the officers. Officer Caprara recovered the firearm.

9. Officer Dawsonia apprehended Scott and arrested him. In a search incident to the arrest, Officer Dawsonia recovered 44 packets of crack cocaine from the defendant.

*Conclusions of Law*

1. The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures, and a court may exclude evidence that is obtained in violation of this amendment. Ordinarily, it is the defendant's burden to show that evidence should be suppressed. *See United States v. Acosta,* 965 F.2d 1248, 1256 n. 9 (3d Cir.1992) (citations omitted). However, when, as in this case, the search and seizure was conducted without a warrant, "the burden shifts to the government to show that the search or seizure was reasonable." *United States v. Johnson,* 63 F.3d 242, 245 (3d Cir.1995).

2. In *Terry v. Ohio,* the United States Supreme Court held that a police officer may conduct a brief investigatory stop when the officer has a reasonable suspicion that criminal activity is afoot. 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). As part of an investigatory stop, a police officer may conduct "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Id.* at 27, 88 S.Ct. 1868. Even though police may conduct such a search without probable cause and merely reasonable suspicion, "the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (citing *United States v.*

*Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). In evaluating the justification for a *Terry* stop, a court must consider "the totality of the circumstances," *United States v. Valentine,* 232 F.3d 350, 353 (3d Cir.2000), and the police officer must point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* 392 U.S. at 21, 88 S.Ct. 1868. However, when an officer approaches an individual without reasonable suspicion or probable cause, the individual has a right to ignore the police and go about his business. *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

■ 3. In this case, Police Officer Caprara had reasonable suspicion to conduct a brief investigatory stop of defendant Scott after a passerby reported to the officer that Scott had been in the Honda. In *United States v. Valentine,* the Third Circuit found that a face to face informant was more reliable than an anonymous tip. 232 F.3d at 354–55. While the Supreme Court had previously held that police officers lacked reasonable suspicion to conduct a *Terry* stop based on an anonymous caller's vague description of a young man carrying a gun, *see Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), the Third Circuit reasoned that a tip from a passerby was more reliable where the police "could assess the informant's credibility as he spoke, knew what the informant looked like, and had some opportunity to find the informant if the tip did not pan out."[1] *Valentine,* 232 F.3d at

---

1. In *Valentine,* the Third Circuit further reasoned that a face to face informant was more reliable than an anonymous tip because an individual exposes himself to retaliation when he gives information concerning a neighbor or someone nearby. 232 F.3d at 353. Therefore, a face to face informant is less likely to lie or exaggerate. *Id.* Furthermore, a citizen who makes a false report may be held accountable by the police. *Id.* While the defendant in *Valentine* argued that the face to face informant left the area and could not have been held accountable for a false report, the Third Circuit found that there was no evidence presented during the suppression hearing to support such a finding. *Id.* at 354. However, the appellate court noted that infor-

355. Furthermore, an informant's credibility is not the only factor in determining whether reasonable suspicion exists. *Id.* Courts must also evaluate the content of the tip as well as other surrounding circumstances. 232 F.3d at 355. In this case, Officer Caprara witnessed shots fired from a black Honda, pursued the automobile, arrived at the 2200 block of Moore Street where the Honda was stopped, and was informed by a passerby that defendant Scott had exited the Honda. Officer Caprara had reason to believe she was dealing with an armed and dangerous individual. There was reasonable suspicion to conduct a brief search for weapons pursuant to *Terry*.[2]

■ 4. Even though defendant Scott attempted to flee after Officer Caprara started to perform a search, flight by itself does not constitute probable cause to arrest. *See Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Cruz,* 910 F.2d 1072, 1077 (3d Cir.1990). However, probable cause materialized the moment defendant Scott tossed a firearm from his waistband. *See United States v. Sawyer,* 224 F.3d 675, 680–81 (7th Cir.2000) (finding probable cause for an arrest for unlawful possession of a weapon where defendant was standing alone in a high-crime area, fled when officer approached, and tossed "what looked to be weapon" during his flight). While Defendant argues that Officer Caprara did not observe the defendant

discard a weapon, this court finds the testimony of Officer Caprara that the defendant discarded a weapon from his waistband credible. Taking into account Scott's flight from the crime scene, the face to face informant, and Scott's disposal of the weapon, this court finds that Officer Dawsonia had probable cause to arrest the defendant.

5. Because there was probable cause to arrest the defendant, Officer Dawsonia's warrantless search of the defendant's person was incident to an arrest and did not violate the Fourth Amendment. *United States v. Robinson,* 414 U.S. 218, 234, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

■ 6. Under *California v. Hodari D.,* the defendant was not seized as he fled from the police; therefore, his discarded weapon is not the fruit of an unlawful seizure and is admissible. 499 U.S. 621, 629, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) ("The cocaine abandoned while [the defendant] was running was ... not the fruit of a seizure, and his motion to exclude evidence of it was properly denied.").

*Conclusion*

Because the drugs were recovered from the defendant's person pursuant to a legal search, and the gun was recovered before the defendant was seized, the defendant's motion to suppress is denied.

An appropriate order follows.

mant reliability was not the only factor to consider in evaluating whether there was reasonable suspicion to stop a defendant. 232 F.3d at 355.

2. In *Illinois v. Wardlow,* the Supreme Court found that reasonable suspicion exists when an individual is present in a high crime area and the individual flees. 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). There is no evidence before this court that 2200 Moore Street is a high-crime area. However, the defendant fled from the area

where the police had stopped the Honda—a crime scene. Even in a low crime area, it is arguable that there is reasonable suspicion to stop and briefly search an individual who flees from a crime scene. This court notes, however, that the defendant fled after or as the officer grabbed his shirt to begin a *Terry* search. Because the court finds that the officer had reasonable suspicion based on the face to face informant and the defendant's proximity to the Honda, there is no need to decide this issue.

## ORDER

**AND NOW**, this 11th day of September, 2002, upon consideration of the Defendant's Motion to Suppress Fruits of Search, the government's response, and after a hearing, it is hereby **ORDERED** that the Motion is **DENIED**.