In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-3092

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSEPH F. PAULUS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04 CR 83—**William C. Griesbach**, *Judge.*

ARGUED MAY 10, 2005—DECIDED AUGUST 22, 2005

Before FLAUM, *Chief Judge*, and KANNE and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* Joseph Paulus, the former District Attorney for Winnebago County, Wisconsin, pled guilty to one count of using the mail and interstate facilities to promote bribery and one count of filing a false tax return. At sentencing, the district judge departed from the Sentencing Guidelines to give Paulus a longer sentence than the one contemplated by the parties in Paulus's plea agreement. Paulus appeals his sentence on the grounds that it was imposed in violation of the Ex Post Facto Clause of the Constitution and that it fails to comply with *United States v. Booker*, 125 S. Ct. 738 (2005). We find that the district

court properly considered factors such a the number of bribes Paulus accepted, the amount of money received, and the resulting loss of public confidence in the justice system when it *sua sponte* departed upward from the guideline range agreed upon by the parties. The sentence also complies with the Supreme Court's *Booker* decision and must be affirmed.

## I.  History

Paulus was the elected District Attorney for Winnebago County, Wisconsin. As the chief law-enforcement officer of the county, he had the authority to issue and negotiate charges, decline prosecution, and make sentencing recommendations for all criminal and traffic law offenses that occurred within the jurisdiction. From June 1998 to June 2000, Paulus abused his official position by taking bribes from a particular defense attorney. During the two-year period, Paulus gave this attorney's clients favorable treatment (without their knowledge) in exchange for half the legal fees paid in each case.[1] In all, Paulus accepted bribes relating to 22 cases: sixteen in connection with drunk-driving and traffic violations, and six in connection with criminal cases. Paulus received a total of $48,050 in bribe money. He did not report these proceeds on his federal income tax returns, causing a tax loss to the government of $13,531.

---

[1]  Paulus provided benefits such as dismissal of cases, reduction of charges, and return of seized property. Most of the bribes were taken in return for reduced charges in drunk-driving cases. In one instance, a defendant who had been arrested with a blood-alcohol concentration of 0.18% and initially charged with third-offense Operating While Intoxicated—which carries mandatory jail time—was charged only with reckless driving and avoided jail in exchange for a $2,500 bribe to Paulus.

On April 26, 2004, Paulus pled guilty to one count of using the mail and interstate facilities to promote bribery, in violation of 18 U.S.C. § 1952, and one count of filing a false tax return, in violation of 26 U.S.C. § 7206(1). He signed a Factual Basis for Plea, stipulating to all of the underlying facts recounted above. The plea agreement between Paulus and the government set forth what the parties believed to be the appropriate Sentencing Guidelines calculation: an offense level of 18, which corresponded to a sentence of 27-33 months.[2] The parties also agreed that the offenses could not be grouped and that neither party would seek an upward or downward departure.

Importantly, the agreement was not entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(c) (binding the court to the recommended sentence once it accepts the plea agreement), and it specifically stated that "[t]he defendant acknowledges and understands that the sentencing guidelines recommendations in this agreement do not create any right to be sentenced within any particular sentence range." The agreement further stated:

> The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. . . . The sentencing court will make its own determinations regarding any and all issues relating to the application of the sentencing guidelines and may impose any sentence authorized by law up to the maximum penalties [authorized by law (five years of incarceration for count one and three years of incarceration for count two)]. The parties further understand

---

[2] This offense level was calculated based on an offense level of 20 as to count one and 13 as to count two, resulting in a combined level of 21. The government recommended a three-level decrease for acceptance of responsibility.

that the sentencing court may, in certain circumstances, depart either upward or downward from the otherwise applicable guideline range.

In his plea hearing, Paulus confirmed his understanding that he was "not entitled to any particular sentence other than one within the maximum provisions of the law." (Apr. 26, 2004, Tr. at 13.)

On July 20, 2004, the district court did, in fact, issue a notice of possible departure from the Guidelines for the number and amount of bribes accepted and the "disruption of government function" that occurred as a result of Paulus's conduct. Paulus filed his opposition to the proposed departure based on *Blakely v. Washington*, 542 U.S. 296 (2004), and this court's decision in *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), *aff'd*, 125 S. Ct. 738 (2005). The district court rejected Paulus's arguments, and, on August 2, 2004, sentenced Paulus to 58 months of incarceration—longer than the 33-month sentence contemplated by the parties in the plea agreement.

In a thorough and thoughtful sentencing order, the court first opined that an upward departure would not violate *Blakely* because Paulus had "admitted the essential facts upon which the court suggested that a departure [was] warranted" and had acknowledged in both his plea agreement and plea colloquy that the court could depart upward. *United States v. Paulus*, 331 F. Supp. 2d 727, 732 (E.D. Wis. 2004). The court also indicated that under this court's decision in *Booker*, the Guidelines could be considered "as a guide, as opposed to a mandate[.]" *Id.* at 733 (discussing *Booker*). The court ultimately found that a six-level upward Guidelines departure was appropriate considering the number of bribes, the period of time over which the bribes were taken, the amount of money received, and Paulus's status as the elected District Attorney. *See* U.S.S.G. §§ 2C1.1(b)(1), 2C1.1(b)(2), 5K2.7. To support that fourth

factor, the court discussed information supplied by the State of Wisconsin's special prosecutor investigating Paulus's criminal conduct and a newspaper article calling into question the integrity of Paulus's work on cases other than those for which he admitted taking bribes. The court stated that it cited these sources not as proof that Paulus committed crimes in addition to those he admitted, but to demonstrate "the fact that the public confidence in Wisconsin's system of justice ha[d] been seriously undermined." *Paulus*, 331 F. Supp. 2d at 736.

## II. Analysis

Paulus filed his notice of appeal on August 10, 2004. He argues that his plea agreement foreclosed an upward departure, and that the district court improperly sentenced him to longer than the 33 months proposed in the plea agreement. He further argues that the Ex Post Facto Clause of the Constitution was violated because of changes in federal sentencing—namely, the Supreme Court's *Booker* decision—that took place between his plea agreement and his sentencing. Finally, Paulus argues that even if *Booker* can constitutionally be applied to his case, the district court's methodology did not comport with *Booker*, and he is thus entitled to resentencing.

To provide context for Paulus's arguments, we will roughly sketch the changes to the criminal sentencing landscape that have occurred since his plea agreement was entered. The federal Sentencing Guidelines were promulgated in the late 1980s. Under the Guidelines regime, it was mandatory for the district courts to impose sentences based on the Guidelines, and they had limited discretion to depart from the sentences set forth by Congress for particular crimes and aggravating factors. *See Mistretta v. United States*, 488 U.S. 361, 367-68 (1989). The courts could, however, depart from the guide-

lines based on certain mitigating or aggravating factors found by the judge by a preponderance of the evidence. *See id.* at 367. In June 2000, the Supreme Court ruled that, in the context of *state* sentencing guidelines, "any fact [increasing] the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The standard for factors increasing a sentence beyond the statutory maximum was raised from "preponderance of the evidence" to "beyond a reasonable doubt," and such facts had to be admitted by a defendant or found by a jury. *See Ring v. Arizona*, 536 U.S. 584, 602 (2002); *Harris v. United States*, 536 U.S. 545, 563 (2002). This was the state of the law at the time Paulus entered his guilty plea in April 2004.

In June 2004, the Supreme Court clarified that the "prescribed statutory maximum" that must not be exceeded without satisfaction of the criminal burden of proof is actually the presumptive maximum under the guidelines, "not the maximum sentence a judge may impose after finding additional facts[.]" *Blakely v. Washington*, 124 S. Ct. 2531, 2537 (2004). Paulus's sentence was imposed in August 2004, after *Blakely* and before the Supreme Court's 2005 decision in *United States v. Booker*, 125 S. Ct. 738 (2005), which overthrew the *federal* mandatory-guidelines regime. In *Booker*, the Court reaffirmed *Apprendi* and extended it to the federal Guidelines, stating that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 756. To answer the question of remedy, the Court excised the provision of the federal sentencing statute that made the Guidelines mandatory, effectively making the Guidelines advisory. *Id.* at 756-57.

With this background in mind, we address Paulus's attacks on the legality of his sentence. Paulus's argument that the plea agreement itself foreclosed any sentence longer than 33 months is without merit. Paulus was never entitled to a sentence capped at 33 months; he acknowledged numerous times in his plea agreement and plea colloquy that the district court would make its own determinations as to an appropriate sentence and that it was not prohibited from making an upward departure.

We also disagree with Paulus's contention that the court's imposition of a 58-month sentence violates the Ex Post Facto Clause. The Constitution prohibits application of laws inflicting greater punishment than the law prescribed when the crime was committed. *See, e.g.*, *Miller v. Florida*, 482 U.S. 423, 429 (1987); *Weaver v. Graham*, 450 U.S. 24, 28 (1981); *Calder v. Bull*, 3 U.S. (Dall.) 386, 390 (1798). The Supreme Court has held that this principle is to be incorporated into the Due Process Clause of the Fifth and Fourteenth Amendments, barring "courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *See United States v. Lanier*, 520 U.S. 259, 266 (1997) (citations omitted). This has been done with the goal of giving people "fair warning" of the legal consequences that their actions will have. *Id.* at 266; *Miller*, 482 U.S. at 430. Thus, the relevant question here is whether Paulus had fair warning *at the time he engaged in the bribery scheme* that the court could sentence him to 58 months for that conduct. *See Lanier*, 520 U.S. at 267 ("[T]he touchstone is whether the statute . . . made it reasonably clear at the relevant time that the defendant's conduct was criminal.").

From 1998 to 2000, the time period in which Paulus engaged in the criminal conduct at issue, there was little doubt about the constitutionality of the mandatory guideline sentencing regime. *See Edwards v. United States*,

523 U.S. 511, 516 (1998); *Mistretta*, 488 U.S. at 412. So the question as to whether Paulus's sentence violated principles of due process boils down to whether he could have been sentenced to 58 months under that regime.

The answer, of course, is yes. Indeed, the district court painstakingly calculated the 58-month sentence pursuant to the Guidelines, even as it noted that, should *Blakely* preclude mandatory application of the Guidelines, the court "would still be free to look to them as guidance in fashioning a fair and just sentence[.]" *Paulus*, 331 F. Supp. 2d at 733. The court's sentence was based on provisions of the Guidelines authorizing upward departures for the number of bribes accepted, the amount of money received, and a significant disruption of a governmental function. U.S.S.G. §§ 2C1.1(b)(1), 2C1.1(b)(2), 5K2.7. Concerning the latter, under the mandatory guideline regime, the court was allowed to take judicial notice of the fact that public confidence in Wisconsin's justice system had been undermined. *See United States v. Shenberg*, 89 F.3d 1461, 1477 (11th Cir. 1996). The facts underlying the former two grounds for departure—22 bribes in all, and $48,050 in total bribe money—were admitted in Paulus's Factual Basis for Plea.[3] This undercuts Paulus's argument that *Blakely* capped his sentence at 33 months under the Guidelines, but that argument fails for an even more obvious reason: decided in 2004, *Blakely* is simply irrelevant to this due process analysis. As we have said, the question of whether Paulus had "fair notice" of the punishment his conduct would merit must necessarily be focused on the state of sentencing law from 1998-2000, the time Paulus's crimes were committed. At that time, the departure could have

---

[3] Paulus asserts that he did not "admit" the facts to which he stipulated in his Factual Basis for Plea. We disagree, as discussed more thoroughly *infra*.

been made based on judge-found facts under the preponderance of the evidence standard.

Turning from the Ex Post Facto issue, Paulus also attacks his sentence under *Blakely/Booker*. First, he asks us to decide whether the facts to which he stipulated in his Factual Basis for Plea constitute "admissions" sufficient to increase his sentence beyond what the Guidelines dictate for the offenses of using the mail and interstate facilities to promote bribery and filing a false tax return. Paulus says that he "did not intend to admit any facts for purposes of sentence enhancement under *Blakely/ Booker*." As Paulus no doubt knows from his extensive experience negotiating plea agreements from the prosecution's side, such agreements are contractual in nature. *See, e.g.*, *United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005). He may not have foreseen *Booker*, "but that does not alter the effect of the plea bargain." *See United States v. Roche*, 415 F.3d 614 (7th Cir. 2005). Paulus admitted having taken 22 bribes and $48,050 for purposes of a conviction and certain benefits from the government. He is stuck with the consequences of admitting those facts for purposes of sentencing as well.

This leaves us with Paulus's final argument: that his sentence did not meet the *Booker* standard because the district court, citing *United States v. Croxford*, 324 F. Supp. 2d 1230 (D. Utah 2004), sentenced him under pre-guideline law. *See Paulus*, 331 F. Supp. 2d at 732-33. *Booker* requires not that courts revert to sentencing law as it existed prior to enactment of the Guidelines, but that they "take account of the Guidelines together with other sentencing goals[,]" including equality between similarly situated defendants, restitution to victims, congruity with respect to the seriousness of the crime, promotion of respect for the law, just punishment, deterrence, and public protection. *See Booker*, 125 S. Ct. at 764-65. Because Paulus submitted a *Blakely* objection to the

district court's proposed upward departure prior to sentencing, we review any prejudice he might have suffered "in the ordinary way[.]" *United States v. Paladino*, 401 F.3d 471, 481 (7th Cir. 2005). In other words, we review his sentence for harmless error. *See United States v. Schlifer*, 403 F.3d 849, 854 (7th Cir. 2005).

We find Paulus's argument to be misleading because the court clearly did not ignore the Guidelines. As we have already recounted, it undertook the calculation of Paulus's sentence under the Guidelines, and then explicitly stated that, where *Blakely* precludes application of the Guidelines, they may nevertheless be considered as "a guide, as opposed to a mandate[.]" *See Paulus*, 331 F. Supp. 2d at 733, 734-39. Although Paulus's sentence was imposed prior to the Supreme Court's *Booker* decision, the court anticipated *Booker*'s framework and took the Guidelines into account. The court did not cite *Croxford* as support for sentencing Paulus as it would have in 1987, as Paulus claims, but rather for the proposition that even if "the court is not bound by the Guidelines, [it] may determine an appropriate sentence considering the sentencing factors set forth in 18 U.S.C. § 3553(a) based on the credible evidence before it." *Id.* at 733 (citing *Croxford*, 324 F. Supp. 2d at 1247).

The court did not commit error in the methodology it employed to sentence Paulus. We note that even if it had, this error would have been harmless. The court indicated that it would have arrived at the same 58-month sentence regardless of whether it followed mandatory or merely advisory Guidelines. Thus, Paulus would have no claim to a limited *Paladino* remand. *See United States v. Lee*, 399 F.3d 864, 866-67 (7th Cir. 2005) (affirming sentence imposed pre-*Booker* because sentencing judge clearly demonstrated unwillingness to use discretion to give a lower sentence); *Paladino*, 401 F.3d at 484. Moreover, Paulus's sentence is presumptively reasonable

under *Booker*, as it was properly calculated within the Guidelines framework. *See United States v. Mykytiuk*, 415 F.3d 606 (7th Cir. 2005).

### III.  Conclusion

In this case, the district court accomplished the rare feat of imposing a sentence that is beyond reproach even in the thorny period of time when federal sentencing law was anything but settled. The court considered the Guidelines, and in fact determined a sentence that would be upheld under a mandatory guideline regime, while acknowledging that it was not bound by them. It also made clear that it was using only admitted facts—for the facts stipulated by Paulus in his factual basis for plea document were indeed admissions—to depart from the Guidelines range for using the mail and interstate facilities to promote bribery and for filing a false tax return. The court covered all the bases; we thus AFFIRM Paulus's 58-month sentence.

A true Copy:

      Teste:

                                _____
                                *Clerk of the United States Court of*
                                *Appeals for the Seventh Circuit*