| UNPUBLISHED ORDER |
| :---: |
| Not to be cited per Circuit Rule 53 |

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 29, 2006
Decided December 8, 2006

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 05-4662

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee,* | Appeal from the United States <br> District Court for the Western <br> District of Wisconsin. |
| *v.* | |
| | No. 04-CR-188-S-01 |
| MICKEY A. RANDLE, <br> *Defendant-Appellant.* | **John C. Shabaz**, *Judge*. |

**O R D E R**

In 2005 Mickey Randle pleaded guilty to one count of possession with intent to distribute five grams or more of cocaine base, *see* 21 U.S.C. § 841(a)(1), and was sentenced to 400 months' imprisonment. Randle filed a notice of appeal, but his appointed lawyer now moves to withdraw because he cannot discern a nonfrivolous basis for the appeal. *See Anders v. California*, 386 U.S. 738 (1967). For his part, Randle accepted our invitation to comment on counsel's motion. See Cir. R. 51(b). Because counsel's supporting brief is facially adequate, we limit our review to the

potential issues identified by counsel and Randle. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

In October 1999 the Dane County Narcotics and Gang Task force began investigating Randle as a source of crack cocaine, based on information obtained by an undercover agent. The task force agents undertook surveillance of a duplex thought to be a site of crack cocaine sales. They observed that Randle's car was often parked in the driveway. Trash searches uncovered plastic baggies with the corners cut off, "white crumbs" that tested positive for the presence of cocaine, and mail and receipts addressed to Randle. The agents arranged a drug sale between an informant and Randle, and then followed Randle's car as he drove from the duplex.

The task force agent in charge of this operation directed his officers and the sheriff's deputy to stop Randle's car. The agent in charge also called Randle's probation officer to advise her that his task force had stopped Randle and believed he was in the middle of a drug transaction. The probation officer placed a probation hold on Randle. The task force agents then arrested Randle and found $1000 cash in his car. That evening, Randle pretended to cooperate with the police by calling his drug source and setting up a drug buy for that night. The officers released Randle to meet his source, but Randle fled custody. He eluded recapture for over five years until he was finally arrested again in Indiana.

A grand jury returned an indictment charging Randle with one count of possessing with intent to distribute five or more grams of crack cocaine. Randle moved to suppress all statements he made to law enforcement and all evidence secured as a result of those statements, on the grounds that they were obtained from an illegal arrest. He argued that the deputy sheriff lacked probable cause or reasonable suspicion to stop his vehicle after he left the duplex and that law enforcement used the probation officer as a "stalking horse" to facilitate their investigation while circumventing the arrest warrant requirement.

The district judge adopted the magistrate judge's report and recommendation and denied the motion. The magistrate judge reasoned that there was probable cause for the stop because when law enforcement officers are in communication regarding a suspect, the knowledge of one officer can be imputed to the other officers under the collective knowledge doctrine. *See United States v. Sawyer*, 224 F.3d 675, 680 (7th Cir. 2000). Randle entered a conditional plea agreement, reserving the right to appeal the denial of his motion to suppress and withdraw his guilty plea.

Counsel first considers whether Randle could argue that his guilty plea must be set aside because of noncompliance with Federal Rule of Criminal Procedure 11 during the plea colloquy. Counsel, however, gives no indication that Randle desires that his

guilty plea be set aside, and thus counsel should not have addressed this potential challenge in his *Anders* submission. *See United States v. Knox*, 287 F.3d 667, 671 (7th Cir. 2002). Randle states in his Rule 51(b) response that he would like another attorney to review his case for potential issues because he believes he was misguided by his attorney at the time he made the plea, but he does not state that he now wishes to withdraw the plea. In any event, our review of the record reflects that the district court substantially complied with the requirements of Rule 11.

Next counsel considers whether Randle could challenge the district court's denial of his motion to suppress on grounds that law enforcement lacked probable cause or reasonable suspicion to arrest him. Counsel asks whether the deputy sheriff who stopped Randle's car lacked probable cause because he did not have personal knowledge of Randle's drug participation (he was simply acting at the direction of the drug task force agents). For similar reasons, counsel asks whether the probation officer was authorized to issue a probation hold given that she did not participate in the vehicle search or the subsequent investigation.

This argument would be frivolous on appeal. In order to have probable cause, law enforcement agents "must reasonably believe, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspect had committed or was committing an offense." *United States v. Parra*, 402 F.3d 752, 763-64 (7th Cir. 2005). Where groups of officers are working together, the knowledge of the officers may be imputed to one another even when there is no express testimony that the specific information creating the justification for a stop was conveyed to the others. *Id*. at 764. Here there was sufficient evidence for an officer to have formed a reasonable suspicion of criminal activity on the part of Randle. At the time of the arrest, drug task force officers knew from informants that Randle sold crack cocaine, saw Randle's car in the driveway of a building thought to be the site of drug sales, uncovered documents bearing Randle's name and drug paraphernalia from the trash at that building, and staged a drug sale with an informant and saw Randle drive away, in an apparent attempt to complete the sale.

Counsel next considers whether Randle could argue that the ex post facto clause of the Constitution was violated because his offense was committed before the Supreme Court's decision in *Booker*, which, he could assert, effectively raised the maximum penalty that may be imposed for federal offenses by making the guidelines only advisory. Counsel considers whether Randle's sentence should be based on the amount of drugs he pleaded guilty to possessing—five to 50 grams of crack cocaine—and not the 1.5 kilograms included as relevant conduct in computing his sentence. But we have considered and rejected similar ex post facto challenges to sentencing. *See United States v. Paulus*, 419 F.3d 693, 699 (7th Cir. 2005); *United States v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005).

Counsel also considers whether Randle could argue that the 100:1 sentencing disparity between crack cocaine and powder cocaine is unreasonable and disproportionately harms minorities. Yet we have consistently upheld the 100:1 ratio that Congress has decided to implement for crack and powder cocaine; we cannot substitute a different ratio for the one that Congress has selected. *See, e.g., United States v. Jointer*, 457 F.3d 682, 686 (7th Cir. 2006).

Counsel next considers whether Randle could argue that it was clear error for the district court to apply a two-level enhancement for willful obstruction of justice. *See* U.S.S.G. § 3C1.1; *United States v. Porter*, 145 F.3d 897, 902 (7th Cir. 1998). Counsel asks whether Randle acted with the requisite willfulness because his flight was spontaneous. The application notes to the guidelines indicate that the enhancement is not normally applied to "avoiding or fleeing from arrest," so Randle might argue that his abandonment of the drug sting constituted flight from arrest. *See* § 3C1.1 cmt., application n. 5(d).

However, this argument would be frivolous on appeal. The application notes provide a non-exhaustive list of examples of the type of conduct to which this adjustment applies, and include "escaping or attempting to escape from custody before trial or sentencing." § 3C1.1, cmt., application n. 4(e). In determining whether this enhancement is warranted, we have distinguished between panicked, spontaneous, instinctive flight and calculated evasion. *See Porter*, 145 F.3d at 903. The district court did not clearly err in finding that Randle willfully obstructed justice. As the court properly noted, at the time of his arrest he was informed of the investigation and agreed to assist the officers in an undercover capacity. Prior to leaving police custody he was informed that he was still under arrest and would be considered an escapee if he fled. He then intentionally fled to Indiana, where he remained for five years. These findings indicate that Randle's acts were a calculated evasion warranting the sentencing enhancement.

Finally, counsel considers whether Randle could challenge the reasonableness of his sentence on appeal because it is so lengthy. Randle's sentence falls within the properly calculated guidelines range and is therefore presumed reasonable. *United States v. Mykytiuk*, 415 F.3d 606, 607-08 (7th Cir. 2005). Counsel and Randle do not argue that the court was compelled to sentence below the guidelines range. Although the Supreme Court has recently granted a writ of certiorari to consider whether according a presumption of reasonableness to within-guidelines sentences is consistent with *Booker*, *see United States v. Rita*, No. 05-4674, 2006 WL 1144508 (4th Cir. May 1, 2006), *cert. granted*, 75 U.S.L.W. 3246 (U.S. Nov. 3, 2006)(No. 06-5754), the resolution of that case would not affect our conclusion that a challenge to Randle's sentence would be frivolous. The district judge properly considered the factors set forth in 18 U.S.C. § 3553(a) when sentencing: the judge specifically considered Randle's

young age, traumatic childhood experiences, criminal history, employment background, and the sentencing goals of deterrence, punishment, rehabilitation, and protection of the public.

Counsel's motion to withdraw is **GRANTED**, and the appeal is **DISMISSED**.