**UNITED STATES of America,
Plaintiff,**

v.

**Joseph PAULUS, Defendant.**

**No. 04–CR–083.**

United States District Court,
E.D. Wisconsin.

Aug. 6, 2004.

Howard R. Sklamberg, Noah D. Book-binder, United States Department of Jus-tice, Criminal Division, Washington, DC, for Plaintiff.

Franklyn M. Gimbel, Gimbel Reilly Gue-rin & Brown, Milwaukee, WI, for Defen-dant.

## SENTENCING MEMORANDUM

GRIESBACH, District Judge.

Defendant Joseph Paulus was convicted of two crimes: Use of the Mail and Inter-state Facilities to Facilitate Bribery in vio-lation of 18 U.S.C. § 1952, and Filing a False Tax Return, in violation of 26 U.S.C. § 7206. The bribery offense carries a maximum term of five years imprisonment. The maximum term for the tax offense is three years. On August 2, 2004, the de-fendant was sentenced to a term of 58 months in the custody of the Bureau of Prisons. In imposing the sentence, the court departed from the guideline range of 27 to 33 months by increasing the severity of the offense level by six levels. This memorandum is intended to set forth in more detail the court's reasons for the departure and the sentence imposed.

According to the written Factual Basis For Plea submitted by the parties, the defendant, as the District Attorney of Win-nebago County, accepted twenty-two bribes over the course of a two-year period from June of 1998 through June of 2000. The total amount received by the defen-dant in bribes over this period of time was slightly more than $48,000. The twenty-two cases in which bribes were accepted by the defendant included misdemeanor, traffic and at least one felony charge. Most of the bribes were accepted in return for favorable treatment in the form of a reduced charge on drunk driving cases. Other cases involved defendants who had been arrested for, or were under investiga-tion for, passing a counterfeit bill, solicit-ing prostitution, misdemeanor theft, a

hunting violation, and the manufacturing or possession of marijuana. All of the bribes were received from a single attorney who had agreed to pay one-half of his retainer to Paulus in return for the favorable treatment of his clients.

Under the 1998 version of the United States Sentencing Guidelines, which the parties concede is applicable here, the base offense level for Offering, Giving, Soliciting, or Receiving a Bribe is ten. U.S.S.G. § 2C1.1(a). The base level is increased by two levels because more than one bribe was involved. U.S.S.G. § 2C1.1(b)(1). Pursuant to U.S.S.G. § 2C1.1(b)(2), the offense level is further increased by the greater of either the number of levels corresponding to "the value of the payment, the benefit received or to be received in return for the payment, or the loss to the government from the offense, whichever is greatest" from the table in § 2F1.1 or, if the offense involved a payment for the purpose of influencing an elected official or any official holding a high-level decision-making position, by eight levels. Because the $48,000 received by the defendant corresponds to an increase of five levels, the 8–level increase applies, resulting in an offense level under § 2C1.1 of twenty. Upon deductions of two levels for acceptance of responsibility (§ 3E1.1(a)), and an additional level for timely notifying the government of his intent to plead guilty, the total offense level for the mail count is seventeen. As part of the plea agreement, the government and the defendant also agreed that an additional level would be added to account for the Filing a False Tax Return offense. Thus, the total offense level for both counts in the view of the parties is eighteen. Because the defendant has no prior criminal record, his criminal history category is I. The resulting guideline range is twenty-seven to thirty-three months.

] The first issue I must address is whether the parties are correct in their contention that the False Tax Return count results in a one-level increase in the offense level. The Probation Office disagrees with the analysis of the parties and urges that the two offenses be grouped pursuant to U.S.S.G. § 3D1.2, which would result in no increase in the total offense level for the bribery count. If Probation is correct, the guideline range is twenty-four to thirty months.

U.S.S.G. § 3D1.2(d) governs whether offenses are to be grouped. That section provides that offenses are to be grouped:

(a) When they involve the same victim and the same act or transaction.

(b) When they involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

(c) When one count embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

(d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

The two counts before me do not fit any of the above criteria. The offenses involved different victims. The charge of Using the Mails to Facilitate a Bribe victimized most directly the citizens of Winnebago County who the defendant was elected to serve. The offense of Filing a False Tax Return, on the other hand, caused a financial loss to the United States Treasury and United States taxpayers.

Neither offense embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to the other. In other words, the determination of the offense level for the bribery count did not factor in the charge of Filing a False Tax Return. Finally, the offense level was not determined on the basis of any measure of harm or loss common to both offenses.

 If grouped, the resulting sentence range will not reflect the additional offense of Filing a False Tax Return. Such result would be contrary to the policies behind the guidelines. Grouping is intended to avoid increases in the sentence range for conduct that is already factored into determining the offense level. But it is not intended to ignore other criminal conduct that is not otherwise accounted for by the guidelines. *United States v. Vitale,* 159 F.3d 810, 814–15 (3d Cir.1998). And the fact that there were different victims to the two offenses is "a primary consideration in a grouping decision." *United States v. Chavin,* 316 F.3d 666, 675 (7th Cir.2002). The court therefore concludes that application of the guidelines results in a sentencing range of twenty-seven to thirty-three months.

Pursuant to the plea agreement, neither party has requested a departure from the applicable range under the Guidelines. Upon its review of the Presentence Report, however, the court raised its own concern as to whether a sentence within the applicable guideline range would be appropriate. In a notice of possible grounds for departure filed under Fed. R.Crim.P. 32(h), the court advised the parties that it was considering departing from the Guidelines on three possible grounds. First, the court noted that § 2C1.1(b)(1) authorized a two-level increase if the offense involved more than one bribe. In this case, the court noted, the parties agreed that the defendant had accepted twenty-two bribes over a period of two years. The court stated it was concerned that the guideline did not adequately take into account the number of bribes the defendant had accepted over a substantial period of time. Second, the court noted that § 2C1.1(b)(2) authorizes an increase based on either the value of the payment received for the bribe or the fact that the offense involved a payment for the purpose of influencing an elected official, but not both. The court was concerned that the guidelines failed to take into consideration the amount of money the defendant received in bribes. Lastly, the court noted that § 5K2.7 authorized a departure above the guideline range if the defendant's conduct resulted in a significant disruption of a governmental function. Although the court noted that interference with a government function was inherent in the offense of bribery and thus that factor would not ordinarily warrant a departure, a departure would be permissible if the circumstances were unusual. The court directed the parties to be prepared to address the court's concerns.

 In response to the court's notice, the defendant filed a memorandum in which he argues that none of the factors listed by the court in its notice justify a departure above the sentence range prescribed by the Guidelines. More fundamentally, defendant Paulus argues that the court is barred from departing upwardly from the Guidelines under the Supreme Court's recent decision in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and the Seventh Circuit's application of *Blakely* to the United States Sentencing Guidelines in *United States v. Booker,* 375 F.3d 508 (7th Cir. 2004). The court will address defendant's *Blakely/Booker* argument first.

In *Blakely v. Washington,* the United States Supreme Court held that Washing-

ton's sentencing scheme, which mandated a sentence within a specified range absent a finding of certain aggravating factors found by the sentencing court based on a preponderance of the evidence, could not be constitutionally applied to increase a defendant's sentence. Relying on the rationale it announced in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely*, —— U.S. ——, ——, 124 S.Ct. 2531, 2536, 159 L.Ed.2d 403. The Court further held in *Blakely* that the term "statutory maximum" in this context means "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.* Although the United States Sentencing Guidelines were not before the Court in *Blakely*, several justices noted in dissent that the majority's reasoning would seem to compel the same result. And in *Booker*, the Seventh Circuit agreed with those dissenting justices and held that under *Blakely*, the United States Sentencing Guidelines could not be constitutionally applied so as to result in a sentence in excess of the presumptive maximum based on the sentencing court's finding of a disputed aggravated factor. Based upon the holdings of these cases, the defendant argues that the court may not impose a sentence in excess of the guideline range.

■ The chief difficulty with the defendant's argument is that he has admitted the essential facts upon which the court suggested that a departure may be warranted. In fact, as part of his plea agreement, the defendant agreed that the government could prove beyond a reasonable doubt that he accepted twenty-two bribes over a two year period totaling more than $48,000. (Plea Agreement, ¶ 5; Factual Basis For Plea, ¶¶ 1–14.) Moreover, in the course of the plea colloquy and in the plea agreement itself, the defendant specifically acknowledged his understanding that "the sentencing court may, in certain circumstances, depart either upward or downward from the otherwise applicable guideline range." (Plea Agreement, ¶ 27.) The defendant understood that his plea agreement with the government did not entitle him to any particular sentence and that the sentencing court remained free, subject to appellate review, to sentence him to up to the maximum available for each offense. Under these circumstances, the court concludes that it would not violate the defendant's constitutional rights if it concluded that a departure above the guideline range was appropriate based on the facts admitted by defendant. And while it may be true that the defendant has not admitted the impact his offense may have had on the public, this is not the kind of sentencing factor to which *Blakely* is addressed.

■ I also note, however, that even if the defendant had not admitted the relevant facts as part of the plea agreement, the court would not be barred from considering those facts in determining an appropriate sentence. Where *Blakely* prevents the United States Sentencing Guidelines from being constitutionally applied, the result is not to impose a sentence that ignores aggravating factors and takes into consideration only mitigating factors. Nor is the proper response to convene a jury to determine the myriad of factors that can and should legitimately impact the sentence that should be imposed in a case where there is no dispute as to the defendant's guilt. Instead, where *Blakely* precludes the application of the Guidelines, the conclusion that most reasonably follows is that the Guidelines should not be applied at all and sentencing should pro-

ceed under the law as it existed prior to the enactment of the Guidelines. *See United States v. Croxford,* 324 F.Supp.2d 1230, 1244–46 (D.Utah 2004); *see also United States v. Einstman,* 325 F.Supp.2d 373 (S.D.N.Y.2004); and *United States v. Mueffleman,* 327 F.Supp.2d 79 (D.Mass. 2004). Of course, under pre-Guideline law, the court is not bound by the Guidelines, but may determine an appropriate sentence considering the sentencing factors set forth in 18 U.S.C. § 3553(a) based on the credible evidence before it. *Croxford,* at 1247. And while the court would not be bound by the Guidelines, it would still be free to look to them as guidance in fashioning a fair and just sentence since they embody the careful consideration and study on the part of the Sentencing Commission of the myriad of factors that should be properly considered in determining an appropriate sentence. *Id.,* at 1247–48. That is precisely what this court would in fact do, as it has done in other cases where the issue has been raised. Consideration of the Sentencing Guidelines as a guide, as opposed to a mandate, will also allow sentencing courts to minimize the wide disparity in sentencing across the country for similarly situated defendants that led to the enactment of the Guidelines in the first place. The court therefore concludes that neither *Blakely,* nor *Booker,* preclude consideration of all of the factors relevant to determining a just and fair sentence under the guidelines and will proceed to consider whether a departure is warranted in this case.

■ Ordinarily, a district court must impose a sentence falling within the applicable guideline range. *Koon v. United States,* 518 U.S. 81, 85, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). However, a district court may depart from the applicable guideline range and sentence a defendant outside that range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." U.S.S.G. § 5K2.0. The determination of whether departure is warranted requires consideration of the following questions:

(1) What features of this case, potentially, take it outside the Guidelines' "heartland" and make of it a special, or unusual, case?

(2) Has the Commission forbidden departures based on those features?

(3) If not, has the Commission encouraged departures based on those features?

(4) If not, has the Commission discouraged departures based on those features?

*Koon,* 518 U.S. at 95, 116 S.Ct. 2035. Depending on how those questions are answered, the court then determines whether a departure is appropriate:

If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guidelines heartland. The court must then bear in mind the Commission's expectation that departures based on

grounds not mentioned in the Guidelines will be highly infrequent.

*Id.*

In this case, the court has identified several factors which may take it outside of the Guideline heartland of typical bribery cases. First, the relevant conduct admitted to by the defendant as part of the plea agreement included the fact he accepted twenty-two bribes over a two-year period totaling slightly in excess of $48,000. While both the fact that there were multiple bribes and the value of the payment received are factors that the applicable guideline, in general, addresses, neither factor is adequately taken into consideration in applying the guideline in this case. U.S.S.G. § 2C1.1(b)(1) provides for a two-level increase "if the offense involved more than one bribe or extortion." Here, however, the offense involved twenty-two bribes over a two-year period, more than ten times the number that would have justified the two-level adjustment allowed. Thus, while the fact that there were multiple bribes is mentioned in the guideline, the court finds that it is present in this case to an exceptional degree that makes this case different from the ordinary case where the factor is present.

In this connection, it should be noted that this is not a case where there were twenty-two installments for a single favor. The defendant accepted twenty-two payments for twenty-two separate favors on twenty-two separate cases. Bribery, by its very nature, is a difficult crime to detect. Like prostitution, it occurs only between consenting parties both of whom have a strong interest is concealing their actions. And often, when it involves public corruption as in this case, one of the parties occupies a position of public trust that makes him, or her, an unlikely suspect. In light of these facts, it is unusual to uncover even one instance of bribery by a public

official, let alone twenty-two. This fact takes the case outside of the heartland.

The amount of payment received in bribes is another factor that can affect the guideline range under § 2C1.1. In this case, however, it did not. Under U.S.S.G. § 2C1.1(b)(2), the court is to adjust the offense level by the greater of two measures:

(A) If the value of the payment, the benefit received or to be received in return for the payment, or the loss to the government from the offense, whichever is greater, exceeded $2,000, increase by corresponding number of levels from the table in § 2F1.1 (Fraud and Deceit).

(B) If the offense involved a payment for the purpose of influencing an elected official or any official holding a high-level decision-making or sensitive position, increase by 8 levels.

Under the table in § 2F1.1, the payment received by the defendant corresponded to an increase by five levels. But because the defendant was the elected District Attorney of Winnebago County, the eight-level increase under (B) applied. Thus, the amount of money the defendant received in bribes was not factored into the guideline. It appears that the Commission decided that the amount of money paid in bribes to an elected or high-level official should not influence the guideline range unless the amount exceeds $200,000. U.S.S.G. § 2F1.1(B)(1)(I). And where the amount received exceeds $200,000, the fact that the offense involved payment to an elected or high-level official drops out of consideration.

No explanation has been provided as to why this is so. Certainly the fact that the person taking the bribe is a high level official and the amount of the payment are proper considerations. In this court's judgment, it is the defendant's status as

the elected District Attorney of Winnebago County that is the most aggravating factor in the case. As long ago as 1926, the Wisconsin Supreme Court noted that "[t]he district attorney is not a mere legal attorney. He is a sworn minister of justice." *O'Neill v. State*, 189 Wis. 259, 207 N.W. 280 (1926). That a person who would intentionally commit a serious crime would also be willing to pay someone to avoid responsibility for that crime is hardly surprising. That the elected District Attorney entrusted with the power to issue criminal charges and the responsibility to represent the interests of the public would accept that payment and assist him in doing so is not only shocking, but represents a serious threat to our entire system of justice.

A democratic form of government depends upon the consent of the governed. That consent will not last if those who serve in government betray the trust that is given them. No such government can survive if those entrusted with the authority to exercise governmental power are not honest in carrying out their duties. This is not to say that we expect them to be perfect and to make no mistakes. Human beings are of course fallible creatures. To expect a government free of human error is to expect more than is possible in this world. But there is a significant difference between mistakes, even large mistakes, and corruption. Accepting a bribe is not an error of judgment. And accepting twenty-two bribes over a two-year period for reducing charges in twenty-two cases is conduct that is properly characterized as systematic or pervasive corruption of a governmental function. This offense and the conduct relating to it strike at the heart of the system of justice we have in this country and of which we are rightly proud.

As applied to the facts of this case, the guideline for bribery does not adequately take these facts into account. The fact that the bribes, though accepted by a member of the executive branch, were intended to and did subvert the very branch of government responsible for insuring justice is not considered under the guideline. Where the offense involves a payment to an elected or high-level official, the guideline draws no distinction between whether the defendant is the criminal, or in this case his lawyer, who pays the bribe, or the elected official holding a public trust who accepts it. And unlike cases that do not involve payments to elected or high-level officials, it does not take into consideration the amount of the payment received unless it exceeds $200,000. Then where the amount paid does exceed that amount, the fact that it involved an elected or high-level official falls out of the equation.

This does not mean, however, that the Sentencing Commission intended such factors to be ignored. Application note 5 to § 2C1.1 states:

> Where the court finds that the defendant's conduct was part of a systematic or pervasive corruption of a governmental function, process, or office that may cause a loss of public confidence in government, an upward departure may be warranted. *See* Chapter Five, Part K (Departures).

This language indicates "that the Sentencing Commission did not adequately account for systematic corruption resulting in loss of public confidence in government" in the guideline itself. *United States v. Shenberg*, 89 F.3d 1461, 1476 (11th Cir. 1996).

The factors set forth above (the number of bribes over a two year period, the amount of money received and the defendant's status as the elected District Attorney of Winnebago County), convince this court that the defendant's conduct was

part of a systematic or pervasive corruption of a governmental function, process or office that has caused a loss of public confidence in the very part of government where public confidence is most essential. Public confidence in the honesty and integrity of those working in government is of course essential in all areas of government. But it is especially crucial for those working in our courts where disputes are to be resolved not by votes or elections, but by operation of law. Corruption in the application of the law undermines public confidence in the very possibility of justice.

It should be noted that "[t]he guidelines do not require a showing of actual public harm." *Shenberg*, 89 F.3d at 1477. Application Note 5 "only requires the court to find that the corruption 'may' cause loss of public confidence in the government." *Id.* In this case, however, it is clear that the defendant's conduct has resulted in an actual loss of public confidence. The Presentence Report states:

> The State of Wisconsin Attorney General's Office is conducting an independent investigation into the possibility of other criminal conduct committed by Mr. Paulus while he was the District Attorney. Attorney William Hanrahan has been assigned to investigate the possibility of charges against Mr. Paulus. He indicates that he, a few assistants, and 12 law students are following up on allegations of wrongdoing by Mr. Paulus. Mr. Hanrahan advises they are currently investigating approximately 32 total cases of bribery or other wrongdoing. He believes there may be more cases to investigate, but they are only doing so with the cases brought to their attention. Mr. Hanrahan indicates it will take approximately six more months to make a determination as to whether charges will be filed or not. Mr. Hanrahan advises his office has received numerous complaints from citizens advising they have lost faith in the criminal justice system. Mr. Hanrahan indicates the effects of Mr. Paulus' actions may be far reaching in that the assistants working under him possibly learned a dishonest way of prosecuting criminals. He believes the total effects of Mr. Paulus' tenure may never be known.

Presentence Report, ¶ 26.

While it is true that I am unable to rely on the information provided by the State's special prosecutor as to whether the defendant actually committed crimes in addition to those he has admitted as part of his plea agreement in this case, the investigation itself demonstrates the fact the defendant's conduct has cast a shadow over not only those cases in which he admitted to accepting a bribe, but over other cases his office prosecuted as well. When a prosecutor shows himself to be dishonest, it calls into question all of his work. This is also clear not only from several of the letters the court has received from attorneys and members of the public, but also from a newspaper article that was included with one of those letters. *See* Dee J. Hall, *Did Paulus Cheat To Get Convictions?*, WISCONSIN STATE JOURNAL, May 8, 2004. Although not accepted for the truth of the matters asserted, these items are reflective of the fact that the public confidence in Wisconsin's system of justice has been seriously undermined. Moreover, even in the absence of such evidence, this is a fact of which the court could take judicial notice. *Shenberg*, 89 F.3d at 1477.

U.S.S.G. § 5K2.7 specifically authorizes departures based on disruption of governmental function. And while the section notes that a departure on that basis is normally not appropriate for offenses like bribery because interference with a governmental function is inherent in the offense, it does acknowledge that a departure may be warranted when the circumstances are unusual. Here, for the

reasons set forth above, the court finds that the circumstances are unusual. The fact that the defendant, as the elected District Attorney of Winnebago County, accepted twenty-two bribes on twenty-two cases over a period of two years takes this case outside of the heartland of cases to which the bribery guideline would normally apply. I therefore conclude that an upward departure is appropriate.

There remains the question of the extent of the departure that is appropriate. Defendant argues that interference with a government function or loss of public confidence in government is too subjective and speculative a basis on which to rest a departure. (Def's Response To Notice of Possible Departure, at 12.) "Because some government interference is inherent in the offense of bribery and it is impossible to determine whether such interference was unusual," he argues, "the Court should re[f]rain from departing from the sentence recommendation of the government." (*Id.*)

■ There is some merit to defendant's argument. That there was interference with a government function to an unusual degree and a loss of public confidence in government as a result of his offense are facts that this court has found. But the question of how to measure such impact and assign a numeric adjustment in the applicable offense level under the Guidelines is a matter of judgment. Such matters cannot be quantified, or at least easily quantified. Thus, the Seventh Circuit has recognized that "[a] district court's determination of the extent of an upward departure is by nature a discretionary decision." *United States v. Leahy*, 169 F.3d 433, 445 (7th Cir.1999). Nevertheless, the Seventh Circuit has made clear that a district court's determination of the extent of departure must be reasonable. In order to meet this standard the Seventh Circuit has

set forth a method the sentencing court is to follow:

Although there are no hard and fast rules for determining the extent of an upward departure, this Court has "approved of a method that involves calculating the defendant's sentence by analogy to existing guideline provisions." .... Thus, a district court should determine the extent of an upward departure "by comparing the seriousness of the aggravating factors that motivate the departure with the adjustments in base offense level prescribed by the guideline provisions that apply to conduct most closely analogous to the defendant's offense conduct."

*Id.* (*quoting United States v. Horton*, 98 F.3d 313, 317 (7th Cir.1996)).

■ In this case, the court has looked to two sections of the applicable guideline that have been applied in this case. U.S.S.G. § 2C1.1(b)(1) authorizes a two-level increase because there were more than one bribe, and § 2C1.1(b)(2)(B) authorized an eight-level increase because the offense involved a payment to an elected official. Because these guidelines have been applied in determining the applicable guideline in the case already, it is not the court's intent to simply apply them again. But the factors that the court has concluded warrant a departure are similar to, but more aggravating than, the factors that are addressed by those sections. If more than one bribe warrants a two level increase, then it seems reasonable that an ongoing pattern of behavior involving twenty-two bribes should result in a significantly greater increase. Similarly, if the fact that the offense involved a payment to an elected official warrants an eight-level increase, even for a defendant who is not an elected official, it seems reasonable that a substantial increase is also warranted where the offense involves numerous pay-

ments received over a two-year period by the elected District Attorney. This is especially true since it is the acceptance of the bribe by the elected official that results in the loss of public confidence in government and interference with a government function.

I also note that under the table in U.S.S.G. § 2F1.1, a five-level increase would be given if the value of the payments received by the defendant was taken into account, and under U.S.S.G. § 3B1.3, a two-level increase is added for abuse of a position of special trust. Neither of these adjustments are applicable, however, under the facts of this case. As noted above, the value of the payment received is ignored because the defendant is an elected official. And Application Note 3 to § 2C1.1 states that the § 3B1.3 adjustment for abuse of a position of trust does not apply "except where the offense level is computed under § 2C1.1(c), apparently on the assumption that such abuse is already factored in when the offense level is computed under § 2C1.1(b)."

In any event, based on the adjustments provided under the guidelines for such similar factors, the court concludes that an increase of six levels is appropriate in this case. The increase would be higher were it not for the fact that the factors that take the case outside of the heartland are at least partially considered in computing the applicable guideline. But the factors outlined above, particularly the fact that the defendant's conduct was a part of a systematic and pervasive corruption of a government function, process, or office that caused a loss of public confidence in the system of justice, warrants such an increase.

■■■ The resulting offense level is twenty-four. With a Criminal History Category I, the sentencing range is fifty-one to sixty-three months. On the question of where within this range the defen-

dant's sentence should fall, the court is guided by the severity of the offense, the impact of the crime upon the public, and the need to send a strong message that such conduct by public officials will not be tolerated. For the reasons that have been set forth for the departure itself, the need to send such a message is especially important in a case such as this.

Several of the justifications for a lengthy sentence are clearly not applicable here. The defendant does not pose a threat to the safety of the public. He has no criminal record of any kind. Nor does he have rehabilitative needs that require the structure of prison or a lengthy period of time to address. There is no evidence of drug or alcohol abuse, or any type of mental illness. The absence of such problems make the defendant's crime all the more astounding and suggest a greater degree of deliberateness than many crimes.

The court also acknowledges the positive evidence that has been submitted on behalf of the defendant. Several letters from family members, including his parents, siblings and wife, were received. These letters tell a far different story about the defendant. They tell of a child that never gave his parents any trouble, a "dream child" who excelled in school and in sports, who was so "straight" that his siblings referred to him as "the purist," and who from the age of ten wanted to be a lawyer. They speak of a person who worked hard to achieve his dream and who served the people of Winnebago County for more than fourteen years as a brilliant and hard-working prosecutor. These letters, especially the letter from the defendant's wife, also tell of a caring and devoted husband and father who has been actively involved in the care and raising of his children. The court is asked by the family to take into consideration this part of the defendant's life in imposing a sentence and to

especially consider the impact any prison term will have upon his family.

A judge cannot help but think about the impact of a prison sentence upon the members of a defendant's family who are almost always innocent of any wrongdoing themselves. This is especially the case when there are young children. It is perhaps that consideration, more than any other, that makes sentencing one of the most difficult tasks a judge must perform. But sympathy for a defendant's family cannot be allowed to shield a defendant from the punishment he deserves. As a former prosecutor, the defendant himself most assuredly argued for substantial prison terms for defendants with strong family ties and responsibilities. And as prosecutors are wont to do, he most likely reminded the sentencing court in such cases that it was the defendant himself, not the court or the prosecutor, who had brought such pain to his family. The defendant in this case, more than most, knew the impact his crimes would have on his own family when he first considered engaging in such conduct. That he chose nevertheless to engage in it only aggravates his crimes.

As to the defendant's record of achievements as a prosecutor, that record is overshadowed and indeed tainted by the systematic and pervasive corruption that has since come to light. At the same time he was supposedly fighting for justice for the citizens of Winnebago County, and providing leadership and support to crime prevention programs, the defendant was subverting justice by selling favors and leniency. A person who is sincere in his support for and pursuit of justice does not take twenty-two bribes over a two-year period.

At the same time, the court notes that the defendant has accepted responsibility for the crimes before it and saved the government the time and expense of trial. The maximum term for bribery is five years, and while the top of the guideline the court has found applicable exceeds that amount of time, this is not a case where consecutive sentences would be appropriate. Taking all these factors into consideration, I conclude that a sentence toward the middle of the guideline range is appropriate. For these reasons, and for the reasons set forth on the record in court, the defendant is sentenced to a term of fifty-eight months.