STATE of Wisconsin, Plaintiff-Respondent,

v.

John R. MALONEY, Defendant-Appellant-Petitioner.

Supreme Court

*No. 2003AP2180. Oral argument April 12, 2005 and November 9, 2005.—Decided June 10, 2005 and February 10, 2006.*

2006 WI 15

(Also reported in 709 N.W.2d 436.)

For the defendant-appellant-petitioner there were briefs by *Lew A. Wasserman* and *Kies & Wasserman,* Milwaukee, and oral argument by *Lew A. Wasserman.*

For the plaintiff-respondent the cause was argued by *Daniel J. O'Brien,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

¶ 1. LOUIS B. BUTLER, JR., J. John Maloney ("Maloney"), the petitioner, originally sought review of a decision by the court of appeals affirming a circuit court order denying his motion for postconviction relief.[1] In his postconviction appeal and initial review before this court, he contended that he was afforded ineffective assistance of trial counsel. We rejected Maloney's claim

---

[1] *State v. Maloney,* 2004 WI App 141, 275 Wis. 2d 557, 685 N.W.2d 620 (affirming an order of the circuit court for Brown County, Peter J. Naze, Judge).

of ineffective assistance of counsel, but retained jurisdiction to determine "[w]hether this court has authority to remand to the circuit court for a motion for postconviction relief based upon the interest of justice," and, "[i]f so, whether this court should act upon that authority and remand" this case for that purpose. *State v. Maloney,* 2005 WI 74, ¶¶ 2–3, 45–46, 281 Wis. 2d 595, 398 N.W.2d 583 *("Maloney I")*.

¶ 2. We conclude that this court has the authority to use its power of discretionary reversal to remand to the circuit court for a motion for postconviction relief in the interest of justice, notwithstanding the fact that the argument was raised by this court sua sponte. However, because Maloney's brief and oral argument failed to allege sufficient material facts, and no such facts currently exist within the record, to warrant a remand for an evidentiary hearing in the interest of justice, we conclude that Maloney is not entitled to relief on the basis of this record.

I

¶ 3. We discussed the facts of Maloney's case in *Maloney I,* 281 Wis. 2d 595, ¶¶ 4–13. We summarize only the facts that are relevant to this review.

¶ 4. John Maloney, the defendant, and Sandra Maloney ("Sandra") were married in 1978. In 1997, John moved out of the family's home and filed for divorce. Sandra's body was found on her living room couch on February 11, 1998. According to the Green Bay medical examiner, her death was caused by the combination of blunt force trauma to the back of her head, strangulation, and suffocation. The couch, along with Sandra's body, had been set on fire. Preliminary reports from the Green Bay Fire Department and the

Brown County Arson Task Force labeled the fire an accident, although the fire was ultimately deemed arson. The investigators concluded that Sandra's death was a homicide. John Maloney became a suspect.

¶ 5. Because Maloney was a police officer with the Green Bay Police Department, Brown County District Attorney John P. Zakowski recused himself from the investigation. Joseph Paulus, then-District Attorney for Winnebago County, and Vincent Biskupic, then-District Attorney for Outagamie County, were appointed as Special Prosecutors.

¶ 6. Throughout the course of the investigation, Tracy Hellenbrand, who was dating Maloney at the time of Sandra's death, cooperated with the authorities by recording conversations with Maloney. Conversations that took place in Las Vegas between Maloney and Hellenbrand were videotaped, under supervision of Wisconsin authorities, with Hellenbrand's consent and cooperation. These recordings contained inculpatory statements by Maloney regarding the death of Sandra.

¶ 7. Based on the videotaped conversations in Las Vegas, Maloney was arrested and charged with first-degree intentional homicide, arson, and mutilation of a corpse, all in connection with Sandra's homicide.

¶ 8. At trial, the State relied heavily on the recordings of the conversations between Maloney and Hellenbrand in Las Vegas to demonstrate Maloney's guilt. Maloney attempted to challenge the admissibility of the videotapes but was unsuccessful.

¶ 9. Maloney maintained his innocence throughout the trial and asserted that Hellenbrand was responsible for the murder. The jury convicted Maloney of all three charges. Maloney appealed, renewing his challenge to the admissibility of the videotapes. The court of

appeals affirmed. *State v. Maloney,* No. 1999AP3069–CR, unpublished slip op. (Wis. Ct. App. Sept. 6, 2000).

¶ 10. Maloney then filed a motion for postconviction relief under Wis. Stat. § 974.06 (1997–98).[2] In his postconviction motion, Maloney claimed he was denied effective assistance of counsel. The circuit court denied Maloney's motion. The court of appeals affirmed. *State v. Maloney,* 2004 WI App 141, 275 Wis. 2d 557, 685 N.W.2d 620. We accepted review.

¶ 11. Shortly before we heard oral arguments for *Maloney I,* the Wisconsin Department of Justice informed this court that the CBS news program "48 Hours" devoted a segment of its March 26, 2005, show to the investigation and prosecution of Maloney by Joseph Paulus, and attached a transcript of the program. Maloney did not object to the court receiving the transcripts. The transcripts of this television show discussed that in 2004, Joseph Paulus, the former District Attorney of Winnebago County and Special Prosecutor in Maloney's case, had been convicted of misconduct while in office.[3]

¶ 12. In *Maloney I,* 281 Wis. 2d 595, ¶ 45, we concluded that Maloney had failed to carry the burden of demonstrating ineffective assistance of counsel. Despite this conclusion, two questions were raised sua sponte by this court following oral argument: 1) "[w]hether this court has authority to remand to the circuit court for a motion for post-conviction relief

---

[2] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[3] According to the written Factual Basis For Plea, Paulus accepted bribes totaling more than $48,000 over the course of two years, from June 1998 to June 2000, in connection with 22 cases that he prosecuted as district attorney. *See United States v. Paulus,* 331 F. Supp. 2d 727, 729 (E.D. Wis. 2004).

based upon the interest of justice" even though no party had raised or made this argument; and 2) "whether this court should act upon that authority and remand" for that purpose. *Id.,* ¶¶ 3, 46. We retained jurisdiction to address these two questions. We now affirm the decision of the court of appeals.

## II

■

¶ 13. We begin by examining whether this court has the authority to remand the case to the trial court for a motion for postconviction relief based upon the interest of justice, and, if so, whether the court's authority is adversely affected because this court, not the parties, raised the argument sua sponte.

■

¶ 14. There is no question that this court has both inherent power and explicit statutory authority to *reverse* a conviction in the interest of justice "if it appears from the record that the real controversy has not been fully tried," or if there has been a miscarriage of justice.[4]

---

[4] This court has concluded that the two prongs are distinctive. *Vollmer v. Luety,* 156 Wis. 2d 1, 16, 456 N.W.2d 797 (1990). "[A] new trial may be ordered on either of two grounds: (1) whenever the real controversy has not been fully tried or (2) whenever it is probable that justice has for any reason been miscarried." *Id.* (citation omitted).

Under the first prong of the "interest of justice" analysis, the real controversy has not been tried if the jury was not given the opportunity to hear and examine evidence that bears on a significant issue in the case, even if this occurred because the evidence or testimony did not exist at the time of trial. *State v. Hicks,* 202 Wis. 2d 150, 160–61, 549 N.W.2d 435 (1996) (citations omitted).

Wis. Stat. § 751.06.[5] *See also State v. Armstrong,* 2005 WI 119, ¶ 113, 283 Wis. 2d 639, 700 N.W.2d 98; *State v. Hicks,* 202 Wis. 2d 150, 159–60, 549 N.W.2d 435 (1996); *Vollmer v. Luety,* 156 Wis. 2d 1, 17–20, 456 N.W.2d 797 (1990). This court has recently reaffirmed that our inherent power to reverse in the interest of justice is not limited to a direct appeal. *Armstrong,* 283 Wis. 2d 639, ¶ 110.

██

¶ 15. The State acknowledges that this court has the authority, in aid of its jurisdiction, to remand cases to the circuit court for fact-finding hearings. *See, e.g., State v. Klessig,* 211 Wis. 2d 194, 213–14, 564 N.W.2d 716 (1997); *State v. Rewolinski,* 159 Wis. 2d 1, 31–32,

---

In order to grant a discretionary reversal because "it is probable that justice has for any reason miscarried," the second prong, there must be a substantial probability of a different result on retrial. *State v. Schumacher,* 144 Wis. 2d 388, 401, 424 N.W.2d 672 (1988) (citing *State v. Wyss,* 124 Wis. 2d 681, 741, 370 N.W.2d 745 (1985)). *See also State v. D'Acquisto,* 124 Wis. 2d 758, 765, 370 N.W.2d 781 (1985) (quoting *Lock v. State,* 31 Wis. 2d 110, 118, 142 N.W.2d 183 (1966)). As such, the defendant must meet a higher threshold in order for this court to grant a new trial under the second prong.

[5] The statute reads, in full:

In an appeal in the supreme court, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record, and may direct the entry of the proper judgment or remit the case to the trial court for the entry of proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

Wis. Stat. § 751.06.

464 N.W.2d 401 (1990). *See also Wurtz v. Fleischman,* 97 Wis. 2d 100, 108, 293 N.W.2d 155 (1980) ("When an appellate court is confronted with inadequate findings and the evidence respecting material facts is in dispute, the only appropriate course for the court is to remand the cause to the trial court for the necessary findings.") (citation omitted). The State thus concedes that it appears that this court has the authority to retain jurisdiction and remand this matter to the circuit court, even in a collateral proceeding, for a motion for postconviction relief based upon the interest of justice, should Maloney file such a motion. We agree with the State that we possess the authority to remand this matter to the circuit court for a motion for postconviction relief based upon the interest of justice.

[4, 5]

¶ 16. We also conclude that a defendant's failure to assert that the court should exercise its authority to remand the case is not a procedural bar to the defendant if the defendant is entitled to relief. Wisconsin law expressly allows this court to reverse a conviction "regardless of whether the proper motion or objection appears in the record." Wis. Stat. § 751.06. In evaluating whether a case should be retried in the interest of justice, this court "consider[s] the totality of the circumstances" to "determine whether a new trial is required to accomplish the ends of justice." *Hicks,* 202 Wis. 2d at 160 (citing *State v. Wyss,* 124 Wis. 2d 681, 735–36, 370 N.W.2d 745 (1985)). Because we have the authority to reverse a conviction and order a new trial even when the defendant fails to request this action, we conclude that we similarly have the authority to use our power of discretionary reversal to remand to the circuit court for a motion for postconviction relief

in the interest of justice, notwithstanding the fact that the argument was raised by this court sua sponte.

## III

¶ 17. Concluding that we have the authority to remand a case to the circuit court for a postconviction motion in the interest of justice, we examine whether we should do so in this case.

¶ 18. We are reluctant "to grant a new trial in the interest of justice upon our own motion." *Hicks*, 202 Wis. 2d at 161 (citing *Garcia v. State*, 73 Wis. 2d 651, 655, 245 N.W.2d 654 (1976)). *See also Armstrong*, 283 Wis. 2d 639, ¶ 114 (citing *Morden v. Continental AG*, 2000 WI 51, ¶ 87, 235 Wis. 2d 325, 611 N.W.2d 659). We exercise our discretionary authority only in exceptional cases. *Id.* In order for this court to remand a case, an appellant must allege sufficient material facts that, if true, would entitle him or her to relief. *See, e.g., State v. Love*, 2005 WI 116, ¶¶ 2, 42, 56, 284 Wis. 2d 111, 700 N.W.2d 62; *State v. Bentley*, 201 Wis. 2d 303, 309–10, 548 N.W.2d 50 (1996). "[I]f the defendant fails to allege sufficient facts [] to raise a question of fact, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," then the circuit court may deny the motion without a hearing, thereby rendering a remand unnecessary. *See Bentley*, 201 Wis. 2d at 309–10 (quoting *Nelson v. State*, 54 Wis. 2d 489, 497–98, 195 N.W.2d 629 (1972)) (other citations omitted).

¶ 19. We note that Maloney's postconviction motion did not allege that he was entitled to a new trial in the interest of justice. This court raised the issue because of materials that had been submitted to it prior

to the first oral argument in the case. Thus, he has failed to allege any, much less sufficient, facts to raise a question of fact implicating the interest of justice before either the trial court or this court.

¶ 20. Nevertheless, issues raised prior to and during the first oral argument in *Maloney I* prompted this court to ask the parties to brief:

> (1) Whether this court has authority to remand to the circuit court for a motion for post-conviction relief based upon the interest of justice.

> (2) If so, whether this court should act upon that authority and remand as described above.

*Maloney I,* 281 Wis. 2d 595, ¶¶ 3, 46.

¶ 21. In his response to our request, Maloney suggests that he is entitled to relief in the interest of justice because the jury was precluded from evaluating critical evidence: former Winnebago County District Attorney Joseph Paulus, who was the Special Prosecutor in this case, accepted bribes in 22 cases in exchange for giving defendants more favorable treatment. As noted above, Paulus was convicted of misconduct in his capacity as District Attorney in 2004. *United States v. Paulus,* 331 F. Supp. 2d 727 (E.D. Wis. 2004). Paulus admitted accepting bribes in cases involving misdemeanor and traffic charges, and one felony charge. *Id.* at 729–30. According to the federal district court, "[a]ll of the bribes were received from a single attorney who had agreed to pay one-half of his retainer to Paulus in return for the favorable treatment of his clients." *Id.* at 730. His behavior was characterized by the federal court as "systematic or pervasive corruption . . . striking at the heart of the system of justice we have in this country." *Id.* at 735.

¶ 22. What Maloney has failed to establish, however, is how Paulus's misconduct had any impact on his trial. Paulus's corruption is only relevant if it affected the presentation of evidence, or lack thereof, during Maloney's trial.

## A

¶ 23. Maloney alleges that Paulus was not only accepting bribes in the 22 cases for which he was convicted, he alleges that Paulus also unlawfully tampered with evidence during his prosecution of Maloney. Maloney asserts that his attorney's strategic decision to argue that Tracy Hellenbrand was the actual perpetrator of the crimes against Sandra, and the decision not to argue that Sandra's death was an accident, was driven by Paulus's manipulation of the evidence. Maloney contends that Paulus's actions prejudiced the defense in preparation for trial by manipulating the reporting of the cause of death and by tampering with other evidence, and that Paulus's actions now raise significant questions regarding: 1) the reliability of the Las Vegas videotapes shown to the jury; 2) the reliability of the experts' conclusions that Sandra's death was a homicide and that the fire was caused by arson; and 3) the reliability of the medical examiner's conclusions as to the cause of Sandra Maloney's death.

¶ 24. First, Maloney implies that Paulus strategically edited the videotapes of Maloney and Hellenbrand's conversations in Las Vegas, altering the tapes to implicate Maloney in the death of Sandra.[6] Maloney relies on affidavits of Jeanne Anthony Brant, a news reporter for WHBY radio in Appleton who, in

---

[6] The parties dispute the extent of Special Prosecutor Paulus's involvement in the editing of these tapes.

March 2004, examined numerous records relating to Maloney's case.[7] In her affidavits, Brant alleges that the State and Forensic Video disagree with regard to the editing of the videotapes. Brant's affidavits note that Bryan Del Monte, the employee of Forensic Video who was paid to assist in the editing of the Las Vegas tapes, informed her that Paulus had significantly edited the videos. In her affidavit, Brant also contends that the original bill for Del Monte's editing was $27,645.99, but that the final bill was only $5,500.99. According to Brant's affidavit, Special Prosecutor Biskupic told her the earlier bill was a draft of a bill and the $5,500.99 was the corrected bill for work actually completed. Yet, Brant asserts in her affidavit that Del Monte informed her that the $27,645.99 was not a draft, that the original bill reflected services actually rendered, but that they reduced the charges because they were informed the prosecution would not be using much of their work.

¶ 25. In addition, Maloney provided this court with two evaluations from individuals who reviewed the original tapes and the enhanced tapes.[8] These evaluations concluded that the "enhanced" tapes, which were shown to the jury, were of a significantly reduced quality as compared to the original tapes. The evaluations also alleged that portions of the transcripts were not accurate when compared to the original tapes.

---

[7] The affidavits were not raised before the circuit court as part of Maloney's postconviction motion.

[8] The evaluations were provided by Michael Syverson, Owner, Kolb Syverson Communications, Appleton, Wisconsin (July 8, 2005) and Loraine Henes, Henes & Henes Court Reporting Service, Appleton, Wisconsin (July 6, 2005). These were also not raised in the circuit court.

¶ 26. Second, Maloney implies that Paulus withheld information that initial reports from the Green Bay Fire Department and the Brown County Arson Task Force actually labeled the fire an accident. Maloney asserts that withholding this evidence regarding investigators' preliminary beliefs caused the defense to make the strategic decision against arguing that Sandra's death was an accident.

¶ 27. Maloney further alleges that Paulus withheld this information from Dr. Gregory Schmunk, a Brown County Medical Examiner, and other investigators. Maloney implies that withholding this evidence impacted the medical examiner's autopsy.

¶ 28. Maloney notes that this court recognized in *Maloney I* that Dr. Schmunk had indicated that the evidence that initial reports labeled the fire an accident was withheld from him, which may have affected his ruling. *Maloney I,* 281 Wis. 2d 595, ¶ 5 n.3.[9] Maloney also provided this court with a review of the autopsy. The review was conducted by Dr. James D. Dibdin and completed on January 21, 2002. Dr. Dibdin concluded that "the conclusion that Ms. Maloney's death was caused by strangulation cannot be sustained."

¶ 29. In addition, Maloney suggests that a preliminary report by investigators, dated February 12, 1998, indicated that investigators believed the fire was caused by careless use of smoking materials, and that this was withheld from the investigating team. Maloney

---

[9] In *State v. Maloney,* 2005 WI 74, ¶ 5 n.3, 281 Wis. 2d 595, 398 N.W.2d 583 ("*Maloney I*"), we stated:

Initial reports from the Green Bay Fire Department and the Brown County Arson Task Force actually labeled the fire an accident. Dr. Gregory Schmunk, the medical examiner in the case, has since indicated that this evidence was withheld from him, which may have affected his ruling.

implies that the conclusions by the State's fire expert were erroneous. Maloney provides this court with a July 4, 2002, report evaluating the fire evidence by Dr. James G. Munger, Ph.D., MIFireE, CFPS. Dr. Munger's evaluation alleges that the State's investigation did not follow the systematic approach of the scientific method, asserts that the State's hypothesis regarding the cause of the fire constitutes "junk science," and concludes that the fire was caused by the misuse of smoking materials.

¶ 30. Third, Maloney contends that Paulus asked the medical examiner to delay issuing a death certificate for Sandra until the criminal investigation was completed. Maloney draws this court's attention to a letter from Paulus to Dr. Schmunk. In this letter, Paulus requests that Dr. Schmunk refrain from issuing a death certificate because, according to Paulus, issuing a death certificate might compromise the integrity of the investigation into Sandra Maloney's death.[10] Maloney concludes that Paulus must have believed that Dr. Schmunk was not "on board" with Paulus's theory of the cause of Sandra's death.

### B

¶ 31. Upon review of the record, we find that Maloney has not alleged sufficient material facts to justify remanding the case for an evidentiary hearing.

¶ 32. Maloney and his counsel viewed the videotapes in preparation for and during trial. The defense raised no objections about the editing of the tapes or the transcripts of the edited tapes provided to the jurors. At

---

[10] We note that Maloney does not allege that any Wisconsin statute would preclude a medical examiner from postponing the issuance of a death certificate.

trial, Maloney's attorney stated that he had no objection to allowing the jurors to read the transcripts while they viewed the edited video because they were "pretty good" and "right on."

¶ 33. Furthermore, Maloney was a party to the recorded Las Vegas conversations. Had the editing significantly altered the exchange between Maloney and Hellenbrand, Maloney could have objected at trial. He did not.

¶ 34. Maloney now suggests that Paulus's editing of the tapes was unlawful manipulation of evidence. Maloney apparently bases this suggestion on the fact that Paulus has been convicted of accepting bribes in other cases. However, Maloney fails to allege sufficient material facts that link Paulus's misconduct in other cases to the handling of evidence in this case. Absent any such link, we conclude that Maloney's allegations, his reliance on the affidavits, and the recent evaluations of the tapes, fail to justify remand on the basis of this record.

¶ 35. In addition, a review of the record demonstrates that the preliminary conclusion by the investigators that the fire was an accident was actually addressed at trial. Among other evidence, the jury evaluated testimony by Daniel G. Hughes, a private fire investigator hired as an expert by the State,[11] regarding his conclusions as to the cause of the fire. Hughes was asked about and dismissed the preliminary conclusions that the fire was an accident.[12] Maloney's attorney

---

[11] We note that, at trial, the defense recognized that Maloney had attempted to hire Hughes, but that the prosecution had already retained him as their expert.

[12] During the State's direct examination of Hughes, Special Prosecutor Biskupic questioned Hughes about the February 12,

made a strategic decision and argued that Hughes's conclusions were in error because Hellenbrand was the actual perpetrator and that the evidence demonstrated that a novice set the fire, not someone like Maloney who had extensive experience with arson investigations.[13] The jury ultimately convicted Maloney.

¶ 36. These allegations regarding the preliminary conclusions as to the cause of the fire are an attempt by Maloney to reargue his case using a different theory of defense. Maloney has failed to present sufficient material facts that would lead this court to conclude that Paulus's behavior amounted to misconduct that caused his attorney to choose one theory of defense over another.

■■■

¶ 37. In *Maloney I,* we concluded that Maloney had "failed to demonstrate deficient performance." *Maloney I,* 281 Wis. 2d 595, ¶ 45. Maloney's trial counsel decided to argue that Tracy Hellebrand, and not John Maloney, had murdered Sandra Maloney. Maloney's trial counsel decided against arguing that Sandra had died an accidental death. Because we concluded that Maloney failed to prove his trial counsel's decisions

---

1998, report. Hughes explained to the jury that, in his professional opinion, the preliminary conclusion that the fire was an accident was fully inconsistent with the evidence. Hughes based his opinion on the fact that the evidence demonstrated that there may have been more than one point of origin of the fire, that there had been "trailers" between the sources of the fire and the couch, and that someone had placed other smoking materials around the house to make it look like a careless use of smoking materials fire.

[13] On direct and cross-examination of Hughes, Maloney's defense attorney raised concerns with the conclusions drawn by Hughes and attempted to demonstrate that an amateur, Hellenbrand, had set the fire, as opposed to Maloney, who had significant experience working with fires as an arson investigator.

were deficient, we conclude that, without more, he is not entitled to relief. This court's power of discretionary reversal does not allow a defendant to obtain a new trial in an attempt to present a different defense theory years after the one presented by competent counsel failed to persuade the jury. *See Buel v. La Crosse Transit Co.,* 77 Wis. 2d 480, 496, 253 N.W.2d 232 (1977) ("When there are alternative causes of action and one makes a choice, there is little room for arguing the real issue has not been tried"). *See also State v. Hubanks,* 173 Wis. 2d 1, 29, 469 N.W.2d 96 (Ct. App. 1992).

¶ 38. Finally, in his briefing and oral argument in this case, Maloney does not allege sufficient material facts that support his conclusion that Paulus believed Dr. Schmunk was not "on board," and fails to assert how Dr. Schmunk would change his conclusions regarding his professional opinion as to what caused Sandra Maloney's death. As this court said in *Bentley* and *Nelson,* conclusory allegations do not entitle a defendant to relief in the interest of justice. *Bentley,* 201 Wis. 2d at 309, 313;[14] *Nelson,* 54 Wis. 2d at 496–98.[15]

---

[14] "This court has long held that the facts supporting plea withdrawal must be alleged in the petition and the defendant cannot rely on conclusory allegations, hoping to supplement them at a hearing." *State v. Bentley,* 201 Wis. 2d 303, 313, 548 N.W.2d 50 (1996).

[15] In *Nelson,* this court stated that

> if a motion to withdraw a guilty plea after judgment and sentence alleges facts which, if true, would entitle the defendant to relief, the trial court must hold an evidentiary hearing. However, if the defendant fails to allege sufficient facts in his motion to raise a question of fact, *or presents only conclusory allegations,* or if the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may in the exercise of its legal discretion deny the motion without a hearing.

*Nelson v. State,* 54 Wis. 2d 489, 497–98, 195 N.W.2d 629 (1972) (emphasis added).

¶ 39. We recognize that during Maloney's initial trial, the jury did not have the opportunity to review evidence of Paulus's misconduct because it did not yet exist; Paulus was charged and convicted subsequent to Maloney's trial. Maloney asserts that the interest of justice mandates a retrial so that the jury has the opportunity to hear and evaluate information regarding Paulus's misconduct in this case. Yet, because Maloney fails to present facts that Paulus's conduct in this case was unlawful, or that there exists any connection between Paulus's misconduct in the 22 particular cases to which Paulus admitted accepting bribes and Paulus's actions in prosecuting Maloney's homicide case, no basis exists that would support a remand in this matter.

¶ 40. This case is distinguishable from *Hicks*[16] and *Armstrong*.[17] In those cases, this court reversed the

---

[16] In *State v. Hicks,* this court ordered a new trial because the jury had not been made aware of DNA evidence which arguably excluded the defendant as the assailant in a sexual assault case where the identity of the assailant was a central issue. *Hicks,* 202 Wis. 2d at 163–72. Hicks was convicted of burglary, robbery, and two counts of sexual assault. *Id.* at 152. Postconviction DNA testing of hairs found at the scene and on defendant Hicks revealed inconclusive results with regard to the source of some of the hairs, and conclusively excluded Hicks as the source of one of the pubic hairs. *Id.* at 156. Hicks appealed, asserting ineffective assistance of counsel. *Id.* at 157. The trial court denied Hicks' appeal, concluding that it was not reasonably probable that testimony regarding the new DNA evidence would result in a different verdict. *Id.* The court of appeals reversed, finding ineffective assistance of counsel. *Id.* at 152. This court affirmed on other grounds, using its discretionary reversal powers because it concluded that the real controversy had not been fully tried. *Id.* at 152–53.

[17] The defendant in *Armstrong* sought review of a court of appeals decision that affirmed the circuit court's orders denying

defendants' convictions because newly discovered DNA evidence discredited physical evidence that the State had relied on in its prosecution. *Hicks,* 202 Wis. 2d at 159; *Armstrong,* 283 Wis. 2d 639, ¶¶ 2, 139, 146, 155–56. As in *Hicks* and *Armstrong,* new information has come to light in this case: the prosecutor in Maloney's case unlawfully accepted bribes in 22 other cases in which Paulus served as the prosecutor. However, unlike *Hicks* and *Armstrong,* where the newly discovered evidence compromised evidence on which the prosecution relied, Maloney has alleged no facts that would substantiate allegations that *evidence on which the prosecution relied was compromised.* Maloney has not presented this court with any objective factual assertions that, if true, would lead to the conclusion that Paulus unlawfully altered the tapes or manipulated any evidence to Maloney's detriment. We cannot conclude that Paulus's misconduct in other cases, without more, demonstrates Paulus's misconduct *in this case.* Consequently, we conclude that Maloney has not asserted facts to justify a remand for a motion for an evidentiary hearing.

¶ 41. We recognize that this case raises concerns regarding the integrity of Wisconsin's system of administration of criminal justice. Maloney raises serious allegations in contending that a prosecutor may have

Armstrong's *motions to vacate his judgment of conviction and for reconsideration.* State v. Armstrong, *2005 WI 119, ¶ 1, 283 Wis. 2d 639, 700 N.W.2d 98. We reversed the court of appeals, concluding that because the jury had not been given DNA evidence found at the scene of the murder that excluded Armstrong, and because the State had relied upon physical evidence as affirmative proof of Armstrong's guilt, the real controversy had not been tried.* Id., *¶ 2. We vacated the judgment of conviction and ordered a new trial in the interests of justice.* Id.

acted unlawfully in his prosecution of a homicide case. Indeed, concerns that Paulus may have mishandled the Maloney investigation led the Wisconsin Department of Justice to open an independent investigation into the death of Sandra Maloney.[18] Though Maloney has failed to allege sufficient material facts to support allegations that Paulus acted unlawfully in his prosecution of Maloney, if any current or future investigations uncover evidence that Paulus's actions in prosecuting Maloney constituted misconduct, Maloney may file his motion to the trial court raising such misconduct at that time.

## IV

¶ 42. We conclude that this court has the authority to use its power of discretionary reversal to remand to the circuit court a motion for postconviction relief in the interest of justice, even though the issue was first raised by this court, sua sponte. We further conclude, however, that Maloney failed to allege sufficient material facts, and no such facts currently exist within the record, to warrant a remand for an evidentiary hearing in the interest of justice. We therefore conclude that Maloney is not entitled to relief on the basis of this record.

*By the Court.*—The decision of the court of appeals is affirmed.

---

[18] The Wisconsin Department of Justice has conducted an independent investigation into the possibility of other criminal conduct committed by Paulus while he was the Winnebago County District Attorney. Maloney's case was one of the cases under review. *Maloney I,* 281 Wis. 2d 595, ¶ 10 n.6; *Paulus,* 331 F. Supp. 2d at 736. It appears from comments at oral argument that there may be one or more additional investigations pending.